**RICE et, Plaintiffs, v. WHEELING DOLLAR SAVINGS & TRUST COMPANY, EXR, etc., et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 602033. Filed June 30, 1954.

206

McAfee, Grossman, Tappin, Hanning, Newcomer & Hazlett, Cleveland, and Hoppe, Day & Ford, Warren, for plaintiffs.

Arter, Hadden, Wykoff & Van Duzer, Walker H. Nye, Cleveland, and Paul & Phillips, for defendants.

(McDOWELL, J, of Highland County, sitting by designation in Cuyahoga County.)

## OPINION

By McDOWELL, J.

This is a stockholders derivative action brought by the two plaintiffs as holders of one share each of the common capital stock of The Jefferson Company, an Ohio corporation, against Wheeling Dollar Savings & Trust Company, as Executor under the will of D. A. Burt, Sr., and D. A. Burt, Jr., W. L. Burt and Martha B. Kunkel, the three children of D. A. Burt, Sr., deceased. The plaintiffs and the aforesaid defendants are all residents of West Virginia. No personal service was had upon these defendants, the Court's jurisdiction having been invoked by the attachment of certain Ohio funds or choses in action owing to the three Burt children and being therefore limited to those funds. The Jefferson Company, in whose behalf and right the action is brought, is also a party defendant, demand having been made upon it by plaintiffs to bring the action, which demand was refused. The action was defended by the three Burt children under answers disclaiming the entry of general appearance and denying jurisdiction over their respective persons.

The petition prays for judgment on behalf of The Jefferson Company against the other defendants in the sum of $721,631.32 and for general equitable relief. It contains three causes of action, which may be summarized as follows:

The first cause of action alleges that The Jefferson Company was organized in Ohio in 1930 in pursuance of an agreement and plan between and a joint venture of D. A. Burt, Sr., and plaintiff, R. M. Rice, to take over from Burt and Rice certain coal lands in Jefferson County, Ohio, known as the "Beluan Property," and to acquire certain other adjacent or nearby tracts of coal mining properties comprising about 5000 acres. D. A. Burt, Sr. and his sons, the defendants D. A. Burt, Jr. and W. L. Burt, were elected directors and President, Secretary and Vice President respectively and continued to serve as such until 1945 when they sold all their stock to North American Coal Corporation. It is further alleged that upon its organization The Jefferson Company ac-

quired the Beluan property; that in January of 1938 it acquired the right to remove coal from the property known as the "Superior Tract"; that in 1941 D. A. Burt, Sr., purchased the fee of the Superior Tract for $50,000.00 and caused it to be conveyed to his two sons; that in July of 1938 D. A. Burt, Sr. purchased the fee of a property known as the "Climax Tract" for $65,000.00 and caused it to be conveyed to a family partnership, which in 1941 conveyed it to the three Burt Children, who in 1943 cancelled the old lease of the Superior Tract and leased it and the Climax Tract to The Jefferson Company at certain royalty rates and continued to collect royalties from The Jefferson Company until 1948, when they sold all of such coal properties to North American Coal Corporation, and that the funds used for the purchase of these tracts were in part, if not wholly, funds of The Jefferson Company advanced in violation of law. All of this is alleged to be in violation of the joint venture, plan and agreement aforesaid and in violation of the fiduciary duties and obligations of D. A. Burt, Sr., D. A. Burt, Jr. and W. L. Burt as directors and officers of The Jefferson Company. It is alleged that defendant, Martha B. Kunkel, was at all times fully aware of the said joint venture, plan and agreement and that she acted in concert with her father and brothers for her and their benefit, to the detriment of The Jefferson Company and that all of these transactions were fraudulently carried out in violation of their respective fiduciary obligations to the company as shareholders, officers and directors thereof. Similar allegations are made respecting certain smaller tracts of coal properties.

The second cause of action states that in 1944, D. A. Burt, Sr. and his three children, when shareholders, directors and/or officers of The Jefferson Company, caused $10,982.00 of the funds of The Jefferson Company to be paid to the Oglebay Institute of Wheeling West Virginia, a charitable organization, as a contribution from D. A. Burt, Sr. in memory of his mother.

The third cause of action alleges that from 1937 to 1945 the defendants advanced to themselves and to members of their families for their personal use funds of The Jefferson Company; that while all of such advances were repaid, no interest was paid thereon, and the defendants are still indebted to the Company for interest of approximately $10,649.32.

Answers and amended answers of D. A. Burt, Jr., W. L. Burt and Martha B. Kunkel admitted certain factual allegations of the petition, denied generally the other statements thereof and asserted certain defenses of an equitable nature, among them that since 1945 when they sold all of their shareholdings in The Jefferson Company to North American Coal Corporation, none of the three defendants had been an officer, director or shareholder of The Jefferson Company and none had had anything to do with its operations; that with full knowledge of the true facts The Jefferson Company and its directors refused the demand of the plaintiffs to bring the action in the name of and on behalf of The Jefferson Company as plaintiff; that if any cause of action exists it belongs exclusively to The Jefferson Company and that the plaintiffs have no right or power to bring the action for or on behalf of said company.

When The Jefferson Company was organized in 1930 its common shares were issued as follows; 33 shares to plaintiff R. M. Rice, 28 shares to D. A. Burt, Sr., 5 shares to D. A. Burt, Jr. and 34 shares to The W. T. Burt Company, a corporation owned or controlled by the Burt family. Its entire authorized preferred stock consisting of 1,000 shares was issued to The W. T. Burt Company, which had put in the money for the purchase of the Beluan tract. Immediately prior to February 20, 1945. as the result of transfers and the issuance of certain additional stock, the two plaintiffs owned 39 shares of the common stock, L. Alice Rice, a sister of the plaintiffs, owned 6 shares, and the members of the Burt family owned or controlled the remaining 1443 shares. On February 20, 1945, all of the Burts sold their 1443 shares of stock to the North American Coal Corporation for $672.05 a share. North American for a number of years had been interested in the operations of The Jefferson Company and had assisted materially in its financing. D. A. Burt, Sr. and his two sons, who had been officers and directors of The Jefferson Company through the years, thereupon ceased to be officers, directors and stockholders, Martha B. Kunkel ceased to be a stockholder, and a new Board consisting of officers or employees of North American Coal Corporation was elected. Since that time no member of the Burt family has been a stockholder, officer or director or has had any connection with the management of The Jefferson Company.

In March of 1948 R. M. Rice owned 38 shares of The Jefferson Company, Ruth C. Rice owned 7 shares, L. Alice Rice owned 7 shares, and North American Coal Corporation owned all of the other shares. At that time the two plaintiffs and their sister, L. Alice Rice, sold to North American all of their shares except the two retained by the plaintiffs for the purposes of this lawsuit, and received therefor $1,080.00 per share. R. M. Rice's sale was made under an agreement with North American to the effect that in consideration of the sale of 37 of his 38 shares, the plaintiffs reserved their rights as shareholders to proceed against the Burts and that they would receive 50% of all assets which they might recover for The Jefferson Company, the plaintiffs to bear all expenses, including attorney fees. They also agreed to take cash for their remaining two shares, when, as and if The Jefferson Company should be liquidated.

On March 2, 1949, the plaintiffs made written demand on The Jefferson Company to bring suit against the estate of D. A. Burt, Sr. and his children for an accounting, damages and equitable relief. The demand letter stated the belief that some of The Jefferson Company funds were initially used for the purchase by the Burts of the Climax and Superior tracts, and that they were acquired in violation of the Burts' fiduciary relationship to the Company. At a meeting held on March 4, 1949 the Board of Directors of The Jefferson Company, which then consisted entirely of officers and employees of North American Coal Corporation, after obtaining the advice and opinion of the Company's counsel, adopted a resolution refusing the plaintiffs' demand. At that time, and when this action was filed by the plaintiffs in April of 1949, North American was the owner of 1711 and 1713 outstanding shares of The Jefferson Company and each of the plaintiffs was the owner of one share. The

Jefferson Company is now in process of liquidation by its principal owner, North American.

At the beginning of the trial, immediately following the opening statements, counsel for defendants moved to dismiss the petition on the ground that under the facts above stated the plaintiffs have no right or capacity to maintain this stockholders' derivative suit. The motion was argued by counsel but decision was reserved until completion of all the testimony and final submission of the case.

The legal issue thus raised is a most interesting one. It, as well as all other issues, has been exhaustively briefed by both sides and has been the subject of much study and consideration by the Court. The question is whether a minority shareholders' derivative suit, seeking recovery on behalf of the corporation, can be maintained in equity where the defendants are former directors or shareholders and where the demand that the corporation bring the action was considered and refused by a board of directors representing the holder of nearly all of the outstanding stock, none of whom participated or was in any way involved in the conduct of the defendants complained of in the petition.

It is elementary that normally a corporate cause of action belongs solely to the corporation and can be enforced by it alone. **Sec. 1701.63 R. C.** expressly vests all of the capacity and authority of an Ohio corporation in its Board of Directors. See also 13 Fletcher on Corporations, Sec. 5944; 6 Thompson on Corporations, 3rd Ed. Sec. 4490. Cases inevitably arose, however, where those in control of the corporation were themselves guilty of breach of fiduciary duty, fraud, waste of corporate assets and similar unlawful acts. Being so involved, they would not cause the corporation to bring suit against themselves, and this created situations where at law minority shareholders were without remedy. Such an injustice called strongly for the intervention of courts of equity, and so it came about that equity devised the remedy of the stockholders' derivative suit, as an exception to the general rule. Such an action is of equitable cognizance only. **Scullin v. Drug Co., 138 Oh St 132;** 13 Fletcher on Corporations, Sec. 5944. Doubtless on the principle of requiring the exhaustion of all legal remedies, even where the circumstances are such that a derivative action may be brought, it is a condition of the exercise of the derivative right by a stockholder that a demand be made that the corporation bring the action and that it be refused, unless it is plain that a demand would be a futility. **Ellis v. Savings Co., 104 Oh St 599; Zinn v. Baxter, 65 Oh St 341.**

In 1887 the Supreme Court of the United States decided the widely cited case of Hawes v. Oakland, 104 U. S. 450. A shareholder of a privately owned waterworks corporation brought a bill in equity against the corporation, its directors and the City of Oakland, alleging that the Company was furnishing the city with water for all municipal purposes, without compensation, and that the city was entitled to free water only in cases of fire or other great necessity; that plaintiff had demanded of the Board of Directors that the Company desist from its illegal practice but that the Board refused to do so. A demurrer by the city was sustained and the bill dismissed by the lower court. The Supreme Court affirmed.

The opinion of the Supreme Court reviewed at length a number of earlier decisions by the English Courts of Chancery, and the case of Dodge v. Woolsey, 18 Howard 331, 59 U. W. 331, decided in 1855. The Dodge case had permitted the maintenance of a derivative action by a minority shareholder under the facts there involved on the ground that the conduct of the directors "partake more of disregard of duty, than of an error of judgment. It was a nonperformance of a confessed official obligation, amounting to what the law considers a breach of trust, though it may not involve intentional moral delinquency."

The opinion in Hawes v. Oakland, supra, written by Mr. Justice Miller, stated that it was felt there should be a consideration of the grounds on which Dodge v. Woolsey was decided and a just limitation of the exercise of those principles. After its review of Dodge v Woolsey and the other pertinent cases the opinion enunciates the following rules:

"We understand that doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit—

"Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization;

"Or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders;

"Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

"Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity."

Corbus v. Mining Co., 187 U. S. 544, arose on a bill in equity by a minority shareholder to restrain his corporation from paying an Alaskan license tax claimed to be illegal. In affirming the dismissal of the bill the court referred to Hawes v. Oakland and Dodge v. Woolsey, supra, and said:

"The directors represent all the stockholders and are presumed to act honestly and according to their best judgment for the interests of all. Their judgment as to any matter lawfully confided to their discretion may not lightly be challenged by any stockholder or at his instance submitted for review to a court of equity. The directors may sometimes properly waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. They may regard the expense of enforcing the right or the furtherance of the general business of the corporation in determining whether to waive or insist upon the right. And a court of equity may not be called upon at the appeal of any single stockholder to compel the directors or the cor-

poration to enforce every right which it may possess, irrespective or other considerations. It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs. As said in Dodge v. Woolsey, 18 How. 344: "The circumstances of each case must determine the jurisdiction of a court of equity to give the relief sought."

In Kessler v. Ensley Co., 123 Fed. 546 (1903) minority shareholders filed a bill in equity against the corporation and **former** officers and directors to recover on behalf of the corporation for frauds of the directors in the transfer of real estate of the corporation. It was held that, assuming that the original transaction was fraudulent by the directors then in office, and that a court of equity would have set it aside at the suit of the corporation, the subsequent action of other directors and the stockholders in refusing to bring suit for that purpose was an election not to disturb the transaction which was binding upon the corporation and the minority stockholders, no fraud or undue influence inducing such action being charged. In the opinion it is said:

"The power must reside somewhere in every corporation when it has been defrauded, whether by its own officers or third persons, to determine what course it will pursue with reference to the fraud. The fact that the corporation has been defrauded does not strip it of power to elect to stand upon the transaction as made. Every wronged person. who is sui juris, has that right against the wrongdoer. If the corporate tribunal exercises its judgment upon the question honestly, and is not adversely interested, or under the control of other influence which sway it from a fair and impartial judgment from the standpoint of the interest of the corporation itself, a decision not to disturb the fraud, unless it evinces such recklessness and negligence as amounts to bad faith, is not a fraud upon the objecting stockholders, though it results in a refusal to redress a fraud upon the corporation. The duty which the corporation, or its governing body, owes its stockholders in such cases, is to fairly and impartially consider the question of redressing the wrong, and not to commit a corporate fraud upon its stockholders by refusing to set aside the fraud upon the corporation from selfish interest or other bad motives, or from such negligence and indifference as is equivalent to bad faith, and amounts to a clear breach of trust, as distinguished from mere bad judgment."

S. Colomont & Sons Trust, Inc. v. New England Theatre Operating Corp. (Mass. 1950), 93 N. E. 2d 241, was a case where minority shareholders made claim on behalf of the corporation against other shareholders who were its principal executives, and where a disinterested majority of the shareholders had voted that it was not in the best interests of the corporation to bring suit. In holding that the minority shareholders had no right to insist that suit be brought the court said:

"If the majority of the board of directors of a corporation are incorruptible, free from collusion with wrongdoers, and ready to act for the best interests of the corporation, there is no reason why an individual stockholder should be permitted to involve it in lawsuits. (221 Mass. at page 538, 109 N. E. at page 456.)

"* * * On principle, we perceive no reason why the usual rule recog-

nizing that it is for the corporation to decide questions of business policy should be subject to an exception limiting the corporate power where a charge is made against an officer or director but where an independent, disinterested majority of the stockholders acting reasonably and in the best faith have voted that in their judgment it is not in the best interest of the corporation to sue. We do not believe that in such a case the power of effective decision shifts from a majority to a minority of the stockholders. We know of no principle requiring that a corporation once wronged cannot exercise an honest judgment to refrain from doing that which may wrong it even more."

Another Massachusetts case, Dunphy v. Newspaper Association, 146 Mass. 495, 16 N. E. 426, states the principle very aptly:

"It would be contrary to the fundamental principles of corporate organization to hold that a single shareholder can at any time launch the corporation into litigation to obtain from another what he deems to be due to it, or to prevent methods of management which he thinks unwise. Intelligent and honest men differ upon questions of business policy. It is not always best to insist upon all one's rights; and a corporation acting by its directors, or by vote of its members, may properly refuse to bring a suit which one of its stockholders believes should be prosecuted. In such a case the will of the majority must control. It is only when the action of a corporation in refusing to proceed at the request of a stockholder is fraudulent as against him, or in disregard of his rights, that he can maintain a suit in his own name in the corporate right. The court cannot interfere with the management of corporations in matters which are properly within their discretion, so long as their discretion is fairly exercised, and it is always assumed until the contrary appears, that they and their officers obey the law, and act in good faith towards all their members."

In Ohio the case of **Cooper v. Central Alloy Steel Corp., 43 Oh Ap 455,** is in accord with the governing principles of the foregoing cases. After refusal of his demand on Central Alloy to bring suit a minority shareholder brought an action for an accounting for the benefit of Central Alloy against certain of its officers and directors for fraudulent breach of trust in making a contract with another company of which they were also directors, resulting in loss to Central Alloy, and in causing an unfair merger agreement between three companies to be approved, under which the predecessor of Central Alloy and its shareholders received a fraudulantly low value for their interest. It does not appear clearly whether the two defendants accused of fraudulent acts were directors at the time the demand on Central Alloy to bring suit was refused. On a review of all the evidence the court found on the merits that there was no actionable fraud, but also concluded that plaintiff had no right to sue, because the refusal of the corporation to bring the action was made in good faith and after proper consideration. It is said at page 470 of the opinion:

"The basis of the plaintiffs right to bring this suit rests upon the fact that Central Alloy wrongfully refused to bring this action, that its investigation thereof was perfunctory and arbitrary, its refusal expedi-

ent and wrongful, and that such action ·constituted a breach of trust. This we find to be untrue and wholly unsupported by the evidence, and the contrary is proved, in that the board of directors caused an investigation to be made covering an adequate period of time and at considerable expense to arrive at the truth of the plaintiff's claim. The failure of the plaintiff to prove, and the lack of concealment, fairness, and proof made of the facts to the contrary by the defendants, must of themselves defeat the plaintiff's claim."

In **10 O. Jur. 361** is the statement:

"A stockholder * * * must show a clear breach of duty on the part of the directors in neglecting or refusing to act in the matter, amounting to such grossly culpable conduct as would lead to irremediable loss if he were not permitted to bring the matter before the courts. * * * The law permits him to bring an action to enforce a right in behalf of the corporation, only where the corporation itself refuses or fails to do so where it is controlled by those who are perpetrating the wrong, or who will benefit thereby,—or where the facts alleged and proved show that the suit would not be prosecuted by the corporation in good faith or for the benefit of the corporation and its shareholders."

Other authorities, including 13 Fletcher Cyclopedia of Corporations, Sec. 5821, might be quoted, but in the opinion of this Court the foregoing are sufficient to force the conclusion that the plaintiffs have no right or capacity to bring this action and that the motion to dismiss their petition must be sustained.

Except for two shares owned by the plaintiffs the North American Coal Corporation was the owner of The Jefferson Company at the time the demand to bring suit was made. As holder of 1711 out of 1713 common shares, or of 99.88% of all of the outstanding common stock, its representatives constitute the entire membership of the board of The Jefferson Company. Acting under the advice of counsel those directors deliberately decided that the corporation should not bring this action and refused the plaintiffs' demand that it do so. No member of this board was directly or indirectly a party to or in any way involved in any of the wrongs alleged by the plaintiffs. There is no showing that their decision was anything but the exercise of a considered and unbiased judgment. Indeed, since any recovery from the defendants would accrue almost entirely to the benefit of North American, whose employees these directors were, their own interests would seem to be more likely to influence them to bring the action than refuse to do so. Under these circumstances a court of equity should not and will not substitute its judgment for theirs and pass on the wisdom of decision.

The Court has not been referred to and has not found any case where a shareholder's derivative suit has been sustained against former officers and directors and where, as here, the board which refused to have the corporation bring the suit was not acting ultra vires or with no involvement in the acts complained of. Plaintiffs rely both on Dodge v. Woolsey, supra, and Ashwander v. Tennessee Valley Authority, 297 U S. 288. For reasons which have been stated the Court is of the opinion that the Dodge case gives no support to their position, and considers the Ashwander case to be in the same category.

The Ashwander case was a suit by minority shareholders to invalidate a contract between their corporations and the Tennessee Valley Authority. They contended that the contract was invalid because it called for the performance by an agency of the Federal Government. The board of directors of the corporation had refused to bring suit and the Supreme Court held that the plaintiffs could therefore maintain it but only because of the claimed illegality of the transaction, the unconstitutionality of the contract. This plainly appears from the following language of the opinion:

"Plaintiffs did not simply challenge the contract of January 4, 1934, as improvidently made—as an unwise exercise of the discretion vested in the Board of Directors. They challenged the contract both as injurious to the interests of the corporation and as an illegal transaction, —violating the fundamental law."

Another point of distinction is that the Board of Directors which refused to bring suit in the Ashwander case was evidently the same board which had originally authorized the making of the illegal contract and hence the demand was not passed upon by an entirely disinterested board.

It is contended in plaintiffs' brief that in refusing to bring suit the present directors of The Jefferson Company were guilty of a breach of their fiduciary duty "to protect, guard, preserve, maintain and recover corporate assets." The authorities heretofore reviewed show that if they are in an unbiased position and act honestly, the wisdom of their decision will not be reviewed by the courts. There is not the slightest evidence in the case to warrant the inference or thought that the decision not to bring suit was not made in the honest belief that such a suit would not be in the interests of the Company.

The sustaining of the motion to dismiss for lack of capacity of the plaintiffs to sue disposes of the case in its entirety. Nevertheless, in its consideration of the case, the Court has studied the evidence as contained in a lengthy stipulation of facts, a great number of exhibits, the oral testimony embracing 558 pages and the voluminous and helpful briefs filed by counsel for both sides. The Court is unable to say from the evidence that any actionable fraud or breach of fiduciary duty has been shown and the Court finds that plaintiff has failed to establish the allegations of the first and third causes of action of the petition.

With respect to the second cause of action, the contribution of $10,982 to Oglebay Institute, a charitable corporation, was made in 1944 at the instance of D. A. Burt, Sr. and his sons in memory of the mother of D. A. Burt, Sr. It was essentially the contribution of the Burt family and represented a use of corporate funds not sanctioned by law and without going through the procedure of notifying all shareholders as prescribed in §1702.26 R. C.

It is therefore the judgment of the Court that the petition of the plaintiffs be dismissed at their costs and that the attachments issued against defendants D. A. Burt, Jr., W. L. Burt and Martha B. Kunkel be discharged. A journal entry may be drawn accordingly.