726 F.2d 1075
 Fed. Sec. L. Rep. P 91,468, Fed. Sec. L. Rep. P 99,622
In re GENERAL TIRE AND RUBBER COMPANY SECURITIES LITIGATION.
John J. PEARL & Curtis R. Pearl (82-3129), George Brooks
Schreiber (82-3130), Objectors-Appellants,
v.
The GENERAL TIRE & RUBBER COMPANY, et al., Appellees.
 Nos. 82-3129, 82-3130.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 25, 1983.
Decided Jan. 13, 1984.
As Amended By Amended Order Denying Rehearing and Rehearing
En Banc March 8, 1984.
 
 Sterling Newell, Jr., Ron Tonidandel (argued), Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, for appellants in No. 82-3129.
 Robert D. Storey, Thomas P. Meaney, Jr., Burke, Haber & Berick, Cleveland, Ohio, Steven R. Riokin (argued), Washington, D.C., for appellant in No. 82-3130.
 Gene Mesh (head counsel), Gene Mesh Co., L.P.A., Cincinnati, Ohio, for appellees Kramer, Milberg, Weintraub, Lewis, Kaufman, Moheit and Barr.
 Avery S. Cohen, Kenneth G. Weinberg, Guren, Merritt, Sogg & Cohen, Cleveland, Ohio, Stanley L. Kaufman, Kaufman, Taylor & Kimmel, New York City, for Lewis.
 David L. Creskoff, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for Kramer.
 Jeffrey W. Herrmann, Peter S. Pearlman, Saddle Brook, N.J., for Weintraub.
 Stanley Nemser, Wold, Popper, Ross, Wolf & Jones, New York City, for Barr.
 Arthur N. Abbey, New York City, for Kaufman.
 Richard B. Dannenberg, Lowey, Dannenberg & Knapp, Benjamin L. Rose, New York City, for Moheit, The General Tire & Rubber Co., and RKO Co.
 Richard E. Guster, Ruetzel & Andress, Akron, Ohio, for Michael O'Neil, The General Tire & Rubber Co., and John O'Neil.
 Isaac Schulz, Cleveland, Ohio, for Michael O'Neil, J.W. Gurtner, Fincher, Eichner, Vollbrecht and Nichols.
 
 
 1
 Marvin Schwartz (argued), Philip K. Howard, Sullivan & Cromwell, New York City, for The General Tire & Rubber Co., General Tire Intern., R.K.O. General, Aerojet General, D. Bruce Mansfield and J.T. Morley.
 
 
 2
 John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Price Waterhouse.
 
 
 3
 William S. Burton, Cleveland, Ohio, John W. Beatty, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for Henkel, Mansfield, Morley and Walsh.
 
 
 4
 Before JONES and WELLFORD, Circuit Judges, and HARVEY, District Judge.*
 
 
 5
 NATHANIEL R. JONES, Circuit Judge.
 
 
 6
 Objecting stockholders of General Tire and Rubber Company (General Tire) John J. Pearl, Curtis R. Pearl and George B. Schreiber (objectors) appeal from an order of the district court approving the settlement of derivative claims arising from General Tire's extensive corporate misfeasance. Schreiber additionally contends that the district court erred in denying his petition to intervene, while the Pearls additionally claim that the district court erred in failing to provide adequate notice of and an adequate hearing on the proposed settlement. The principal issue before this Court, however, is whether the district court's approval of the settlement of eight shareholder derivative suits pending against General Tire constituted an abuse of discretion. After careful consideration of the law and policy in this complex area, we conclude that the district court did not abuse its discretion in approving the settlement.
 
 
 7
 The lengthy and convoluted history, from which the present appeal derives, begins in the 1960's and early 1970's. During that period, General Tire engaged in ubiquitous corporate improprieties and apparent illegalities. The United States Securities and Exchange Commission (SEC) uncovered these activities and instituted civil proceedings against General Tire. On May 10, 1976, the SEC's investigation culminated in the filing of a complaint, consent decree and judgment. SEC v. The General Tire and Rubber Co., [1975-76] Fed.Sec.L.Rep. (CCN) p 95,542 (D.D.C.1976).
 
 
 8
 This consent decree permanently enjoined General Tire from committing similar violations in the future. The decree also required General Tire to establish a Special Review Committee of its Board of Directors for the purpose of investigating and reporting the suspect activities cited in the SEC's complaint. The SEC approved the director chosen to head the committee, the independent counsel selected to inform the inquiry and the independent accountant procured to aid in the investigation. The committee conducted an extensive investigation, and filed a thorough report in the United States District Court for the District of Columbia. The report details General Tire's prior offensive and illegal practices, and suggests remedial action to prevent future improprieties. The Committee recommended that General Tire overhaul internal auditing procedures, enlarge the scope of independent accountant review, revise the procedures of General Tire's wholly-owned subsidiary, RKO General, and return misappropriated corporate funds. The Committee also determined that because board members Henkel, Henry, Mansfield, Morley, O'Neil and Walsh were not involved in any of the cited suspect activities, they were qualified to implement the proposed changes. In addition, the Committee found that the law and accounting firms chosen to investigate General Tire had no previous contact with the Company.
 
 
 9
 While the Special Committee conducted its investigation, four separate derivative suits were filed on behalf of General Tire against certain officers and directors alleging damages and seeking remedial relief from the "questionable payments" cited in the SEC complaint.[1] On April 18, 1977, the Judicial Panel on Multi-district Litigation consolidated the suits in the Northern District of Ohio. In Re: General Tire & Rubber Company Securities Litigation, 429 F.Supp. 1032 (J.P.M.D.L.1977). A Committee of the General Tire Board of Directors then retained the independent law firm of Bricker, Evatt, Barton & Eckler of Columbus, Ohio (presently Bricker & Eckler) to aid them in determining whether the continuation of the derivative suits was in General Tire's best interests. The Bricker firm concluded that independent members of the Board had the power to discontinue the suits, that Henkel, Henry, Mansfield, Morley and Walsh were such "independent members" and that they should instruct their counsel to "seek dismissal of the four shareholders derivative suits now pending against the company."[2] Following Bricker's recommendations, these directors decided not to pursue the derivative suits. General Tire and various individual defendants thereafter moved for summary dismissal of the suits. Those motions and further discovery were stayed, pending approval of the settlement.
 
 
 10
 On January 24, 1980, the Federal Communications Commission (FCC) refused to renew broadcast licenses held by RKO General, a wholly-owned subsidiary of General Tire. These licenses are worth over ten million dollars. The FCC based its decision to deny renewal on the fact that (1) General Tire and RKO General had engaged in reciprocal trade practices in contravention of the anti-trust laws, (2) RKO had filed inaccurate financial records, and (3) RKO had deliberately withheld information from the SEC in its investigation of General Tire. In Re: Application of RKO General, Inc., 78 FCC 2d 1 (1980). RKO appealed the FCC's decision to the United States Court of Appeals for the District of Columbia. The Court reversed the loss of two licenses, but affirmed the loss of a third license because RKO wrongfully withheld information during the renewal proceedings.[3]
 
 
 11
 After the FCC decided to deny the licenses, derivative suits were filed on behalf of both RKO and General Tire. These suits were calculated to recover damages incurred by General Tire and RKO as a result of the loss of the licenses. On March 27, 1980, two new directors, Lester Garvin and R.B. Tullis, were appointed by General Tire to another special litigation committee. They recommended that the Company invoke the business judgment rule and dismiss the derivative actions. That recommendation was supported by additional conclusions reached by Bricker. Seven "independent" directors adopted the recommendation, whereupon the defendants filed motions to dismiss and for summary judgment. The suit was then transferred to the United States District Court for the Northern District of Ohio and joined for settlement purposes with the four previous 1977 derivative suits.[4]
 
 
 12
 On March 3, 1981, the district court ordered discovery on the issue of the independence of directors and requested supplemental briefing on the effect of the termination of RKO's licenses. The plaintiffs in the derivative suits were persuaded by discovery that the directors were indeed independent. After discovery, the parties entered into settlement negotiations.
 
 
 13
 On June 25, 1981, the parties in the several derivative actions presented for the district court's approval a Stipulation of Settlement. The terms of that Settlement are the subject of this appeal. Those terms reflect the parties' belief that General Tire's independent directors were empowered, as a matter of law, to determine whether these actions should be maintained, that those directors were duly chosen to dismiss the actions and that the continuation of the litigation would create a great business hardship for General Tire. The settlement also acknowledges the plaintiffs' role in implementing remedial action to prevent future improprieties and provides for the appointment for three years of two "outside" directors on the RKO Board. Although the plaintiffs' attorneys did receive a fee award, neither General Tire nor RKO recovered monetary damages. The settlement's terms finally require the dismissal of all claims relating to the complaints and the waiver of all rights to recover losses incurred by General Tire.
 
 
 14
 On July 20, 1981, notice of a settlement hearing was sent to all 50,000 of General Tire's shareholders. The notice described the nature of the case, the terms of the proposed settlement, the independent directors' conclusion that the continuation of the derivative suits was not in the corporation's best interest and the shareholders' right to appear at the hearing and object to the terms of the agreement. The Pearls and Schreiber were among the five stockholders who objected to the settlement's terms. They appeared at the hearing and objected to the settlement based upon arguments similar to the ones that they raised before the district court and to ones that they now raise before this Court.
 
 
 15
 After consideration of those arguments, the district court entered an order on December 15, 1981 approving the settlement agreement as "fair, reasonable and adequate." The Court stated that the "Ohio formulation of the business judgment doctrine" placed upon the independent directors the responsibility to decide whether derivative suits should be dismissed. The Court concluded, therefore, that the suits would "very likely" be dismissed on summary judgment. The factors noted by the Court in support of the "reasonableness" of the settlement included (1) the fashioning of remedial measures, (2) the appointment of outside directors to RKO's board, (3) the difficulty of proving damages to and recovering damages for the corporation, (4) the complexity and expense of further litigation and (5) the relatively small number of objectors to the settlement.
 
 
 16
 In this "reasonableness" calculus, the district court referred generally to the pending FCC and IRS proceedings. After the district court determined that the settlement was "fair, reasonable and adequate," the Supreme Court denied certiorari in the case of RKO General v. FCC, 670 F.2d 215 (D.C.Cir.1981). RKO thereby exhausted its appellate remedies and forfeited all rights to one of its major television licenses. In May, 1982, the station terminated its operations at an estimated loss of over $100,000,000.00. The district court did not consider the effect of that specific dollar loss in concluding that the settlement agreement was "fair, reasonable and adequate."
 
 
 17
 By separate order, the district court also denied Schreiber the right to intervene as a party to this litigation. The Court stated that, as a shareholder, Schreiber had been adequately represented. Furthermore, the district court stressed that Schreiber has the right to appeal, a right which he now exercises.
 
 
 18
 Although these factual circumstances which give rise to the present appeal are quite complex, our task as a reviewing court is clearly defined. Federal Rule of Civil Procedure 23.1, which governs derivative suits, provides that "[t]he action should not be dismissed or compromised without the approval of the court." This Court will set aside the district court's approval of a settlement agreement only if the discretion afforded that court has been abused. Masterson v. Pergament, 203 F.2d 315 (6th Cir.), cert. denied, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953); Cohen v. Young, 127 F.2d 721 (6th Cir.1942); Young v. Katz, 447 F.2d 431 (5th Cir.1971). The discretion afforded by Rule 23.1 permits the district court to act as a third party to the compromise and a guardian of the corporation's interest. Masterson, 203 F.2d at 315. The proponents of the settlement, however, have the burden of persuading the court that their compromise is fair, reasonable and adequate. Cotton v. Hinton, 559 F.2d 1326 (5th Cir.1977).
 
 A. Approval of the Settlement
 
 19
 The objectors now principally assert that the district court abused its discretion in approving the settlement. They contend that (1) the court erred in its assessment of the Ohio business judgment doctrine's effect on the success of the pending litigation, (2) erred in its determination that the outside directors acted independently, impartially and in good faith, and (3) erred in its conclusion that the settlement was "fair, reasonable and adequate."
 
 
 20
 (1) The Ohio Business Judgment Rule
 
 
 21
 In the context of shareholder derivative suits, the interpretation and application of the business judgment rule is a question of state law. Burks v. Lasker, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). Because General Tire is incorporated in Ohio, the law of that state clearly applies to this action. Ohio, as a general matter, has adopted the business judgment rule. Sims v. Street Railroad Co., 37 Ohio St. 556 (1862).
 
 
 22
 In Wadsworth v. Davis, 13 Ohio St. 123 (1862), the Ohio Court first held that the board of directors is empowered to decide whether to bring a suit on behalf of the corporation. Courts may not challenge the directors' decision where that decision is unbiased and made in good faith. Rice v. Wheeling Dollar Savings & Trust Co., 71 Ohio L.Abs. 205, 130 N.E.2d 442 (1954); Roderick v. Canton Hog Ranch Co., 46 Ohio App. 475, 189 N.E. 669 (1933). A stockholder has no independent right to bring a suit to void a contract unless the directors' refusal to bring the suit is "wrongful, fraudulent and arbitrary." Cooper v. Central Alloy Steel Corp., 43 Ohio App. 455, 183 N.E. 439 (1931). The district court concluded from this line of cases that the Ohio formulation of the business judgment doctrine is "crystal clear" and predicted that Ohio courts would apply that general doctrine to the particular circumstances of a shareholder's derivative action.
 
 
 23
 Although we do not find the impact of the Ohio business judgment rule upon this case to be "crystal clear," we do agree with the district court's assessment of that impact. In Cooper, wherein individual directors were named as defendants, the Court rejected a summary dismissal and addressed the merits of the underlying controversy. 183 N.E. at 442. The Court, in ruling for the directors, stated that they had met the "severest" test of showing that the transactions were "fair and free of taint of fraud." Cooper declined however to hold that this "severest" test of director disinterestedness is the "rule" in Ohio. 183 N.E. at 445. In Roderick, the Court refused to excuse the shareholder's lack of "demand" on non-party and unbiased directors. But in view of the fact that the plaintiff had only alleged the directors' "supine acquiescence" in waste and mismanagement, and the fact "that they would not be called upon to order the corporation to sue themselves," the Court held that the "demand" would not have been futile. The Second Circuit, in Galef v. Alexander, 615 F.2d 51, 61 (2nd Cir.1980), interpreted the Ohio business judgment rule and inferred from this portion of the Roderick opinion that Ohio Courts might "consider a summary dismissal of a suit against [the directors in a derivative suit] to be unavailable." Finally in Rice, the Court validated a resolution opposing a lawsuit passed by directors who were not named as parties to the lawsuit and who were not involved in any wrongdoing. In approving the resolution, Rice relied upon the fact that there was "no showing" that the directors' decision was biased. 130 N.E.2d 448. (Emphasis added).
 
 
 24
 Our analysis of Rice, Roderick and Cooper coincides with the Second Circuit's review of those cases in Galef. The Galef court found that a liberal application of the Ohio business judgment rule to shareholder derivative actions is "hardly trumpeted" by this line of cases. 615 F.2d at 61. We concur with the Second Circuit that these cases alone do not provide any "clear" guidance on the application of the Ohio business judgment rule to the case at bar. 615 F.2d at 62.
 
 
 25
 The objectors contend that this Court should look to the federal policy underpinning Sec. 14(a) of the Securities Exchange Act for guidance on the application of the business judgment rule. Their contention is supported by language in Galef. In that case, the Second Circuit stated:
 
 
 26
 Even if Ohio law had been found generally to permit directors who have been sued to initiate a business judgment summary dismissal of the suit against them, serious questions would persist with respect to the ... directors' attempt to cause such a dismissal of the Sec. 14(a) claims.
 
 
 27
 Galef, 615 F.2d at 62. The Galef Court concluded that well-pleaded Sec. 14(a) claims against directors are not the proper subject of summary dismissal. To the extent that the purposes underlying Sec. 14(a) clash with the Ohio business judgment rule, that rule must give way to the overriding federal policy. In Burks v. Lasker, 441 U.S. at 479, 99 S.Ct. at 1837, the Supreme Court agreed that state law should be applied to the business judgment issue "unless the state laws permit action prohibited by the [federal statute], or unless 'their application would be inconsistent with the federal policy underlying the cause of action.' "
 
 
 28
 Were we to find, therefore, that the application of the Ohio business judgment rule to this case would run afoul of the policies of Sec. 14(a), we would be unable to apply that rule, in any form, to this action. Thus we must decide whether the application of the Ohio business judgment rule would be inconsistent with the prohibition in Sec. 14(a). That section provides:
 
 
 29
 It shall be unlawful for any person by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 781 of this title.
 
 
 30
 15 U.S.C. Sec. 78n(a) (1976). The Congressional purpose of Sec. 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. J.J. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The provision, more specifically, was intended to "control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which ... [had] frustrated the free exercise of the voting rights of stockholders." H.R.Rep. No. 1383, 73d Cong., 2d Sess., 13, 14.
 
 
 31
 We take profound note of the reality that this federal policy is often frustrated by the application of a state's business judgment rule. In many instances, derivative actions are the only means of private redress for a Sec. 14(a) violation. Summary dismissal of those cases "would be tantamount to denying a type of enforcement that is essential to the accomplishment of the goals of Sec. 14(a)." Borak, 377 U.S. at 432, 84 S.Ct. at 1559. Indeed Sec. 14(a) would become a nullity if a defendant-director in a derivative action alleging failure to supply adequate information in a proxy solicitation were permitted to dismiss the action on the basis of his own business judgment.
 
 
 32
 The policies of Sec. 14(a) do not clash with the business judgment rule, however, where a connection between the underlying allegations and the proxy process is absent. Where there is no "causal link between" the challenged nondisclosures in the proxy statements and an influenced election, the conflict between a state's business judgment rule and the policies of Sec. 14(a) is diluted. See Galef, 615 F.2d at 66; Gaines v. Haughton, 645 F.2d at 761, 773-76 (9th Cir.1981). In the case at bar, the objectors' proxy claims merely restate allegations relating to the underlying improprieties. Those claims are not connected with transactions authorized by the shareholders through the proxy process. The objectors in this case can not demonstrate a causal link between the challenged activity and the proxy process. The purposes of Sec. 14(a), for that reason, do not apply to, and are not thwarted by, this particular derivative suit. We are unable to conclude, on these specific facts, that the existence of proxy statement claims under Sec. 14(a) precludes dismissal of these suits or that Ohio law is preempted by any overriding federal policy.
 
 
 33
 The inapplicability of federal law and the paucity of controlling Ohio law on the scope of the business judgment rule, therefore, requires that we search to other states for guidance on how the Ohio courts would apply that rule to the facts before us. Sec. 1701.59 of the Ohio Code explicitly permits the board of directors to delegate to a special committee the power to decide whether litigation is in its best interests. Ohio law allows the directors to act in good faith reliance upon a special litigation committee's recommendations.[5] The corporate law of most states favors the extension of the business judgment rule to encompass decisions formulated by such an "authorized board committee comprised of disinterested directors as to the availability of asserting a cause of action possessed by the nominal corporation against some members of the board of directors for alleged wrongdoing." Watts v. Des Moines Register and Tribune, 525 F.Supp. 1311, 1325 (S.D.Iowa 1981). See Burks, 441 U.S. at 480, 99 S.Ct. at 1838; Lewis v. Anderson, 615 F.2d 778, 782-83 (9th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980) (California law); Abbey v. Control Data Corp., 603 F.2d 724, 729 (8th Cir.), cert. denied, 444 U.S. 1017, 100 S.Ct. 1017, 62 L.Ed.2d 647 (1980) (Delaware law); Grossman v. Johnson, 89 F.R.D. 656, 662-663 (D.Mass.1981) (Maryland law); Abramowitz v. Posner, 513 F.Supp. 120, 125-26 (S.D.N.Y.1981) (Delaware law). In view of this weight of authority and of Sec. 1701.59, we join the district court's prediction that the Ohio courts would apply to these facts the business judgment rule, precluding unnecessary judicial interference with the decision of an independent disinterested corporate committee to forgo litigation of derivative claims.
 
 
 34
 Objectors contend that if the business judgment rule extends at all to the actions of a special litigation committee, it must do so in the stringent form articulated in Zapata Corp. v. Maldonado, 430 A.2d 779 (Del.S.Ct.1981). That decision seeks to balance the independent judgment of a board committee against unbridled plaintiff stockholder control of a derivative action. In an effort to achieve that balance, Zapata inquired into the independence and good faith of the committee and then applied its own business judgment to determine the propriety of summary dismissal. The Court fashioned four criteria for judicial review of an independent litigation committee's conclusion: (1) the procedural propriety of an objector's suit, (2) the committee's corporate power to seek dismissal of the suit, (3) the disinterest, independence and good faith of committee members, the bases for the conclusion of such members and the appropriateness and sufficiency of their investigative techniques and (4) the Court's own independent business judgment. Zapata, 430 A.2d at 784-89.
 
 
 35
 The question before this Court, therefore, is whether the Ohio courts would adopt a more deferential review of a special litigation committee's findings or would question those findings in light of their own independent business judgment. We find much to commend both the conventional deferential view and the more novel Zapata view. Because we conclude that the district judge's review of the settlement decision complied with the more severe Zapata standard, however, we need not decide in this case which view the Ohio courts would adopt. The objectors clearly complied with Rule 23.1's "demand" requirement and thus the district court found no procedural defect in initiating the derivative suit. The district judge, consistently with the Zapata standard, also clearly reviewed the committee's corporate power to seek dismissal under Ohio's business judgment rule.
 
 
 36
 (2) The Independence of the Outside Directors
 
 
 37
 The objectors contend that the district court did not adequately review the independence of the outside directors who decided to abandon the derivative suits. We find to the contrary that the district court did indeed carefully consider the disinterestedness of the outside directors. Generally, assertions of the director's lack of good faith must be supported by facts rather than by invective and conclusory allegations. Gaines, 645 F.2d at 765. In circumstances in which the directors are directly liable, however, a well-pleaded complaint may suffice to place the burden upon the director to prove independence. See e.g. Abramowitz v. Posner, 672 F.2d 1025 (2d Cir.1982); Stein v. Bailey, 531 F.Supp. 684 (S.D.N.Y.1982). In the instant case, however, the board members are not charged in the derivative actions with direct liability. The mere fact that a director has been named as a party or implicated in the litigation does not, without more, demonstrate bad faith. Galef, 615 F.2d at 60 n. 17; Lewis v. Anderson, 615 F.2d 778, 781-83 (9th Cir.1979); Abbey v. Control Data Corp., 603 F.2d 724, 727 (8th Cir.1979), cert. denied, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980).
 
 
 38
 The Court properly found that the objectors had not demonstrated that the directors were biased. The Court examined the extensive record "for indications of suspicious relationships between these outside directors and the inside management of General Tire" and "found none." The Special Review Committee, independent counsel and the Bricker & Eckler firm each found that outside directors Walsh, Mansfield, Henkel, Morley, Tullis and Garvin were "independent." The district court concluded generally that these outside directors were "independent."
 
 
 39
 The objectors challenge specifically the independence of Henkel, a partner of the law firm retained by General Tire, and Garvin, who helped General Tire investigate its conduct in Chile. The district court reviewed the disinterestedness of Henkel:
 
 
 40
 Mr. Henkel provided legal assistance to the Company as outside counsel for Securities-related matters for many years. These relationships in themselves would seem insufficient to establish bias in the outside directors, or control of them by inside management.
 
 
 41
 The district court properly concluded that Henkel's mere legal association with General Tire does not alone disqualify him from exercising independent business judgment. We cannot fashion a flat rule which allows only those individuals with absolutely no contact with the Company to exercise independent business judgment. Such a rule would preclude virtually every outside director from involvement in the business judgment by virtue of having been nominated or selected by the corporation. The district court did not abuse its discretion in analyzing Henkel's disinterestedness.
 
 
 42
 The district court was similarly within its discretion when it determined that Garvin was capable of exercising independent business judgment. Garvin served General Tire as an "independent consultant" to investigate its questionable corporate practices in Chile. As a former Citicorp officer with responsibility for Latin American business, Garvin was particularly well qualified for that investigation. Garvin did not participate in General Tire's Chilean affairs, he only participated in the corporation's attempt to scrutinize those affairs after they had occurred. The independence of Garvin is borne out by the Bricker firm's conclusion that he was "absolutely and totally unassociated" with the events compiled in the Special Report or with the events surrounding the 1980 litigation.
 
 
 43
 Our review of the record indicates that the district judge conducted a careful examination into the independence of Garvin, Henkel and all of the outside directors. That examination revealed:
 
 
 44
 little, if any, evidence to temper their appearance of being upright, responsible leaders in the business and civic communities.
 
 
 45
 The district judge properly found insufficient evidence of the outside director's fraud or bad faith to warrant the conclusion of the lack of independence. We find that the district judge's analysis of the "disinterest, independence and good faith" of the committee members was consistent with the Zapata standard.[6]
 
 
 46
 (3) The Fairness, Reasonableness and Adequacy of the Settlement
 
 
 47
 Moreover, the Objectors do not really question, nor could they succeed in questioning, the "adequacy of the investigatory procedures" and the "bases for the Committee's conclusion." Aided by its counsel and accountants, an initial Special Review Committee conducted a thorough investigation into the history of General Tire's past practices. The Committee distributed questionnaires, conducted personal interviews, telephoned contacts, examined expense reports and reviewed all billings for sales in excess of $50,000. The Committee's work culminated in a 233 page report which was filed in the United States District Court for the District of Columbia. General Tire used the Committee's findings and recommendations to help them determine whether the continuation of the derivative suits was in its best interests.
 
 
 48
 In addition, General Tire retained the Bricker firm to assess the independence of board members and the merits of the pending litigation. The firm recommended that the independent board members seek dismissal of the pending suits. Those members acted on the Bricker firm's advice. The process by which that recommendation was constructed and implemented was not only "adequate," it was superior. The compilation of facts which formed the "bases" for the Committee's recommendations clearly satisfied the Zapata requirement.
 
 
 49
 The district court, perhaps most crucially, satisfied the final Zapata requirement by exercising its own independent business judgment to determine whether dismissal of the derivative suits was warranted. After reviewing the terms of the proposed settlement, the district judge independently concluded:
 
 
 50
 It is the opinion of this Court, based upon the considerations just enunciated, that the proposed settlement is a reasonable one.
 
 
 51
 The district court was not unmindful of the "obvious" shortcomings of the settlement, but felt that the advantages outweighed the disadvantages.[7] The Court judged that the shareholders, all but five of whom accepted the agreement, "would have faced considerable difficulties had they brought this litigation to trial." The addition of outside directors to the board of RKO General and the small number of objectors to the settlement were also factors which the district court weighed in finding that the settlement was in the best business interests of the corporation. Thus the district court, in keeping with Zapata, gave "special consideration to matters of law and public policy in addition to the corporation's best interests." See Zapata, 430 A.2d at 788. We conclude, therefore, that even under the more stringent version of the business judgment rule expressed in Zapata, the district court did not abuse its discretion in determining that the directors "very likely" had the power to dismiss the derivative suits.
 
 
 52
 The exercise of that power, of course, precludes success on the merits. The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. Newman v. Stein, 464 F.2d 689, 692 (2nd Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured. See Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.1977). The district court, in view of the slight possibility of successful litigation, was well within its discretion when it determined that the settlement was "reasonable, fair and adequate." The arguments against the reasonableness, fairness and adequacy of that settlement before this Court are no different from those raised below. The objectors, in effect, would have this Court reject the independent business judgment arrived at by a Special Committee of lawyers, accountants and businessmen after a thorough investigation. The objectors would also have this Court reject the additional independent business judgment of the district court after his careful review of the record. Even if we were to agree with the business judgment of the five objectors, we are not prepared to substitute that judgment for the judgment of the district court, the Special Committee and the outside directors. Absent any finding that the district court abused its discretion in concluding that the settlement was "reasonable, fair and adequate," we will not reverse that judgment merely because of a business "disagreement."
 
 
 53
 (B) Additional Claims Surrounding the Settlement Approval
 
 
 54
 (1) Pending FCC and IRS proceedings
 
 
 55
 The objectors also contend that the district court abused its discretion in approving the terms of the settlement without considering pending FCC and IRS proceedings. The "notice of hearing," they argue, failed to address the potential losses resulting from the FCC and the IRS actions. Notice under Rule 23, however, need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1956); Mendoza v. United States, 623 F.2d 1338, 1350-51 (9th Cir.1980). Rule 23 "accords a wide discretion to the District Court as to the form and content of the notice." Id.
 
 
 56
 The district court's notice was not an abuse of discretion in this case. The notice described the terms of the settlement, the reasons for the independent director's determination to seek dismissal of the suits, the legal effect of the settlement and the rights of the shareholders to voice their objections. The "notice" clearly referred to the potential loss of broadcast licenses. Although it did not predict the dollar amount of the loss, the notice did conform to proper disclosure practice. Kohn v. American Metal Climax, Inc., 458 F.2d 255, 264 (3rd Cir.), cert. denied, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). The district court's approval of the notice, therefore, was within its wide discretion.
 
 
 57
 Furthermore, the district court quite properly rejected the objectors' argument that a true balancing of the settlement terms must await the outcome of pending FCC and IRS proceedings. The Court placed itself in the position of an independent director of the corporation and determined that any delay in approval of the settlement would be counter to General Tire's business interest. The district court correctly noted that "pending" FCC proceedings could remain "pending" for "many years." The district court, exercising its independent business judgment as "a representative of the interests of the Company," could not
 
 
 58
 permit such a sword of Damocles to be suspended above the directors and management of General Tire. To rule otherwise would establish a longterm, destructive impediment to the exercise of their business judgment in the day-to-day operations of the firm.
 
 
 59
 While the monetary losses surrounding the FCC and IRS proceedings may be unfortunate, they counteract neither the independence of the Committee's business judgment, nor the independence of the district court's additional business judgment. The wide discretion afforded the district court was hardly abused.
 
 
 60
 We find therefore that the district court did not abuse its discretion in its penetrating review of the propriety of the delegation of the board's authority, the propriety of the application of the Business Judgment Rule, the propriety of the Special Committee's members and techniques and the propriety of the terms of the settlement agreement. Moreover, the district judge astutely assessed the merits of the settlement agreement in accord with its own business judgment.
 
 
 61
 (2) Intervention
 
 
 62
 Objector Schreiber finally argues that the district court erred in denying his petition to intervene. Rule 24(a) of the Federal Rules of Civil Procedure governs a proposed intervention of right:
 
 
 63
 "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." (Emphasis supplied.)
 
 
 64
 A shareholder has no greater rights in a derivative action than does an objector. Any relief obtained belongs to the corporation only; a shareholder has no individual rights to protect through litigation. Hence Schreiber's interests are not only "adequately protected" by the shareholders, they are identical to those of the shareholders. Intervention will be denied where, as in this case, "the applicants' interest is adequately represented by existing parties." Blanchard v. Johnson, 532 F.2d 1074, 1077 (6th Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 100, 50 L.Ed.2d 100 (1976); Afro American Patrolmen's League v. Duck, 503 F.2d 294, 298 (6th Cir.1974). Before the district court, objector Schreiber only questioned the fairness of the settlement. The district court, therefore, did not abuse its discretion in denying Schreiber's petition for intervention.
 
 
 65
 Upon consideration of the complex issues in this case, we conclude that the district judge's findings and conclusions were not an abuse of discretion. Accordingly, the orders of the district court approving the settlement and denying intervention are hereby AFFIRMED.
 
 
 66
 WELLFORD, Circuit Judge, concurring in part and dissenting in part.
 
 
 67
 I am in agreement with the analysis of Ohio law on the business judgment rule made by Judge Jones, and conclude also that the cases cited do not provide clear guidance, contrary to the district court's characterization of that law as "crystal clear." I further agree that the Ohio application of the business judgment rule, although unclear, does not contradict the policies of Sec. 14(a) of the Securities Exchange Act under the circumstances of this case. I concur also that the district court made an adequate analysis of, and granted sufficient discovery, with respect to the independence of the outside directors in this case, although the prior association of Henkel with General Tire rendered his position doubtful at best. I agree also with Judge Jones' conclusion that denial of objector Schreiber's motion to intervene was not an abuse of discretion.
 
 
 68
 I part company, however, on the question of the fairness of the settlement in this case. In the majority opinion, it is fully recognized that actions taken by RKO General, for which all the defendants may share some responsibility, and who certainly faced very serious exposure by reason thereof, had cost the company a valuable television license. The decision in RKO General v. F.C.C., 670 F.2d 215 (D.C.Cir.1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2931, 73 L.Ed.2d 1331 (1982) had already virtually determined this ultimate estimated loss of $100,000,000, and "[T]he district court did not consider the effect of that specific dollar loss in concluding that the settlement agreement was 'fair, reasonable and adequate.' "[1] Majority opinion at 1080 (emphasis added).
 
 
 69
 The consideration of the reasonableness of the settlement did not take fully into account alleged "cover up" activities after 1975 with respect to administrative investigations and the effect of additional IRS actions pending against defendant General Tire and RKO General due to irregularities, and shareholders were not alerted to this additional potential loss, for which defendant directors may have had some responsibility. The alleged benefits to the corporation arising out of the settlement, apart from what was already recommended by the special investigative committee to avoid such future financial disasters, were negligible in my view. $500,000 would be paid by General Tire to the plaintiffs' attorneys; the only benefit was that two members of the RKO Board for three years would be non-officers and non-employees.[2]
 
 
 70
 Even if settlement were deemed advantageous because plaintiffs "would have faced considerable difficulties had they brought this litigation to trial," Pearl v. The General Tire & Rubber Co., MDL No. 265, slip op. at 12 (D.Ohio, Dec. 15, 1981), the miniscule benefits to the corporations and their shareholders do not sufficiently take into account the risks that defendants faced.[3] That plaintiffs' lawyers are satisfied because they were to receive substantial fees without objection from defendants renders the fairness of such settlement even more dubious. See Jamison v. Butcher, 68 F.R.D. 479 (D.Pa.1975).
 
 
 71
 Particularly in view of then pending very serious additional F.C.C. and I.R.S. proceedings against General Tire, the action of the court in approving a bar of all future shareholders' claims arising out of these matters is an abuse of discretion. Whether or not the settlement terminated the present and any future class action challenges,[4] including the Miberg action it seems clear that the district court intended its order to do just that:
 
 
 72
 The complaints in these actions are dismissed on the merits and with prejudice and without costs. The order entered today represents a full and final discharge against all persons whatsoever of any and all claims which were, or could have been, alleged in the complaints, by reason of, in connection with, or which arise out of the matters or transactions set forth or referred to.
 
 
 73
 Pearl, slip op. at 14.
 
 
 74
 As suggested in oral argument before this court, at the very least the settlement could have eliminated (permanently or for a period of time) defendant directors' options or perquisites of office, and/or imposed upon them responsibility to pay a portion of plaintiffs' attorney fees.
 
 
 75
 I would conclude that the district court abused its discretion in approving this settlement as fair and reasonable under the circumstances indicated.
 
 
 
 *
 The Honorable James Harvey, District Judge, U.S. District Court, Bay City, Michigan, sitting by designation
 
 
 [1]
 The derivative actions are cited: Mitchell A. Kramer v. The General Tire and Rubber Co., E.D.Pa., Civ. Action No. 76-1525; Cohn v. O'Neil, D.N.J., Civ. Action No. 76-1006; Alter Milberg v. General Tire, S.D.Ohio, Civ. Action No. C-1-76-323; Harry Lewis v. O'Neill, N.D.Ohio, Civ. Action No. C76-344A
 
 
 [2]
 Exhibit G to 1977 Dalton Aff't, at 3
 
 
 [3]
 The licenses were KHJ-TV (Los Angeles), WOR-TV (New York) and WNAC-TV (Boston)
 
 
 [4]
 The new derivative suits are cited: Kaufman v. Garvin, et al., N.Y.Sup.Ct. Index No. 67231/80; Bar v. O'Neil, et al., N.Y.Sup.Ct. Index No. 67241/80; Monheit v. O'Neil, No. 81-4141 (N.D.Ohio); Monheit v. O'Neil, Del.Ch.Civ. No. 6149
 
 
 [5]
 Sec. 1701.59 provides: Authority of directors; bylaws; reliance of director on corporate records
 (A) Except where the law, the articles, or the regulations require action to be authorized or taken by shareholders, all of the authority of a corporation shall be exercised by its directors. For their own government the directors may adopt bylaws not inconsistent with the articles or the regulations.
 (B) In discharging his duties, a director may, when acting in good faith, rely upon the books and records of the corporation, upon reports made to the corporation by an officer or employee or by any other person selected for the purpose with reasonable care by the corporation, and upon financial statements or written reports prepared by an officer or employee of the corporation in charge of its accounts or certified by a public accountant or firm of public accountants.
 
 
 [6]
 The objectors sought discovery with respect to the issue of the independence of General Tire's directors and claim that the district court improperly denied their discovery rights. While objectors are entitled to "meaningful participation" in the settlement proceedings, Girsh v. Jepson, 521 F.2d 153, 158 (3rd Cir.1975) and "leave to be heard," Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir.1977), they are not automatically entitled to discovery or "to question and debate every provision of the proposed compromise." Cotton, 559 F.2d at 1331
 In this case, the Special Review Committee, two independent firms of outside counsel and the plaintiffs all thoroughly examined the issue of the outside directors' independence. The objectors themselves filed lengthy memoranda on the subject and participated in the settlement hearing. Despite this plethora of information submitted to the district court, the objectors requested additional discovery.
 In deciding whether the district court erred in denying that discovery, we must inquire.
 Whether or not the District Court had before it sufficient facts intelligently to approve the settlement offer. If it did, then there is no reason to hold an additional hearing on the settlement or give appellants authority to renew discovery.
 Detroit v. Grinnell, 495 F.2d 448, 463 (2d Cir.1974). We find that the district court assembled "sufficient facts intelligently to approve the settlement." That Court certainly allowed the objectors "meaningful participation" in the settlement hearing generally and on the question of director disinterest particularly.
 In a similar vein, we find no merit in the objectors contention that the district court abused its discretion in denying them access to depositions filed with the Court one day before the hearing. The district judge quite properly granted objectors additional time to file post-hearing papers to incorporate any information revealed by those transcripts.
 
 
 [7]
 Objector Schreiber apparently argues that the district court's approval of the settlement effectively terminated a class action pleaded by plaintiff Milberg. We do not understand this settlement, however, to encompass the denial of any such class action. Nor do we understand the settlement to bar all future shareholders' claims arising out of the very serious additional F.C.C. and I.R.S. proceedings against General Tire
 
 
 [1]
 In any event, whatever the amount of the actual total loss, it was large and "unprecedented." RKO, supra, 670 F.2d at 235
 
 
 [2]
 The adding of two non-officer directors to the Board of Directors of RKO General is deemed to be no real benefit in view of the absolute control of RKO by General Tire
 
 
 [3]
 The trial judge conceded there was "[n]o monetary recovery to the corporation ... contemplated in this settlement." Pearl, slip. op. at 11. (Emphasis added)
 
 
 [4]
 See footnote 7 of the majority opinion wherein Judge Jones states, without deciding, "[w]e do not understand this settlement, however, to encompass the denial of any such class action." (Emphasis added.) Compare National Super Spuds v. N.Y. Mercantile Exchange, 660 F.2d 9 (2d Cir.1981)