CINTECH INDUSTRIAL COATINGS, INC.; General Polymers Corporation; Superior Label Systems, Inc.; Sentry Paint Technologies, Inc.; PMC, Inc.; Individually and on Behalf of all Others Similarly Situated, Plaintiffs–Appellees,

v.

BENNETT INDUSTRIES, INC., et al., Defendants,

Central Can Company, Defendant–Appellant.

No. 94–4115.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1996.

Decided June 11, 1996.

---

Richard L. Creighton, Jr. (briefed), Louis Francis Gilligan, Keating, Muething & Klekamp, Cincinnati, OH, for Plaintiffs-Appellees Cintech Indus. Coatings, Inc., General Polymers Corp., Superior Label Systems, Inc., Sentry Paint Technologies, Inc.

Richard L. Creighton, Jr., Louis Francis Gilligan, Keating, Muething & Klekamp, Cincinnati, OH, Richard A. Lockridge (argued), Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN, for Plaintiff-Appellee PMC, Inc.

Patrick F. Solon, Mark Crane (argued), Mary Kay McCalla (briefed), Hopkins & Sutter, Chicago, IL, for Defendant-Appellant Cent. Can Co.

Before: MARTIN, GUY, and RYAN, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge, delivered the opinion of the court, in which BOYCE F. MARTIN, Jr., Circuit Judge, joined. RYAN, Circuit Judge (pp. 1203–1204), delivered a separate dissenting opinion.

RALPH B. GUY, Jr., Circuit Judge.

Defendant, Central Can Company, seeks to enforce a conditional "most favored nation" clause in its settlement agreement with plaintiffs in this antitrust action. Under that clause, plaintiffs agreed not to settle their claims against other defendants absent certain conditions without offering similar terms to Central Can. Central Can contends that plaintiffs' motion to dismiss their claims against defendant Cleveland Steel Container Corporation triggered the most favored nation clause. The district court denied Central Can's motion to enforce, and, pursuant to Fed.R.Civ.P. 54(b), directed entry of a final judgment as to that motion. We affirm.

### I.

On March 12, 1992, plaintiffs, Cintech Industrial Coatings, Inc., General Polymers Corporation, and Superior Label Systems, Inc., initiated this antitrust class action against certain manufacturers of steel pails, including Central Can Company (Central Can), Cleveland Steel Container Corporation

(Cleveland Steel), Van Leer Containers, Inc. (Van Leer), Fein Container Corporation, Southline Metal Products Company (Southline), Prospect Industries Corporation (Prospect), Brockway Standard, Inc. (Brockway), and Bennett Industries, Inc. (Bennett). Sentry Paint Technologies, Inc. and PMC, Inc. later brought actions asserting similar claims, which actions were consolidated with the pending case.

The plaintiff class consists of all United States customers who purchased new steel pails from defendants during the period January 1, 1989, through February 29, 1992. The complaint alleges that during that period, defendants and other unnamed co-conspirators conspired to suppress competition by fixing prices of the steel pails.

One of the defendants, Van Leer, entered into a written settlement on the day the complaint was filed and agreed to pay the plaintiff class $1.5 million, approximately 4 percent of the gross dollar amount of Van Leer's sales of steel pails for one year during the period of the alleged conspiracy. That summer, Van Leer was indicted and pleaded guilty to price fixing in federal court.

Approximately one month after the complaint was filed, Central Can began settlement negotiations with plaintiffs. In its first meeting with plaintiffs, Central Can agreed to pay plaintiffs $625,000 plus interest, approximately 4 percent of its sales for one year during the period of the alleged conspiracy. As part of the agreement, however, Central Can insisted upon a most favored nation clause.

The parties negotiated language that reads as follows:

> Plaintiffs agree that, unless present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant in these cases is substantially lessened or reduced, including, but not limited to, by reason of the entry of one or more court orders in these cases or the filing of a bankruptcy or similar petition by such similarly situated defendant, they will not enter into a settlement of their claims against any such similarly situated defendant that is more favorable to such defendant without offering similar terms to Central Can.

Within three months of the complaint having been filed, a settlement agreement was signed. That agreement represents "a full, complete, and integrated statement" of the terms agreed upon by the parties. While the parties agreed that the settlement "shall not constitute or be an admission" of liability by Central Can, the agreement makes clear that plaintiffs allege that Central Can "was a participant in an unlawful conspiracy to fix prices charged to purchasers of new steel pails" in violation of antitrust laws. Notwithstanding their claims, plaintiffs represented in the agreement "that it would be in their best interests and in the best interests of the Class" to settle with Central Can, and that the settlement was "fair, reasonable, and adequate and in the best interests of plaintiffs and the members of the Class." The parties agreed that the claims "be settled, compromised and dismissed on the merits and with prejudice." In partial consideration, Central Can agreed to pay $26,042 monthly to plaintiffs beginning on June 15, 1992, until May 15, 1994. Shortly thereafter, plaintiffs negotiated a similar settlement, including a most favored nation clause, with Bennett, in which the company agreed to pay $375,000, approximately 4 percent of its sales for one year during the period in controversy.

Extensive discovery then ensued involving the remaining defendants, Brockway, Cleveland Steel, Prospect, and Southline.[1] In late April of 1993, Brockway agreed to settle on the same terms as Central Can and Bennett, paying $1.3 million, which represented 4 percent of its sales during the period in dispute. In June 1993, plaintiffs settled with Southline for $203,000, under the same terms as the Central Can, Bennett, and Brockway settlements.[2]

---

1. Fein filed for bankruptcy on April 3, 1992. Plaintiffs pursued their claims in the bankruptcy court and negotiated a settlement for up to $75,- 000, depending on the results of the sale of certain assets.

2. Defendants Bennett and Brockway, while not parties to this appeal, have indicated that they

During the discovery process, tens of thousands of documents and records produced by the various defendants were reviewed and more than 20 depositions were taken. By the conclusion of discovery in October 1993 only two defendants remained, Cleveland Steel and Prospect. Plaintiffs' counsel, reviewing the evidence against both defendants, determined that there was insufficient evidence of Cleveland Steel's participation in the events alleged in the complaint to continue to pursue plaintiffs' claims against the company.

Plaintiffs informed Cleveland Steel that they would seek dismissal without prejudice of all claims against Cleveland Steel. Cleveland Steel, however, indicated that the dismissal should be with prejudice. Plaintiffs and Cleveland Steel then negotiated a mutual release, which "in consideration of the dismissal of all claims with prejudice against Cleveland Steel" also released each party from all claims arising out of the litigation.

On February 18, 1994, plaintiffs filed a motion to dismiss their claims against Cleveland Steel with prejudice, citing the lack of sufficient evidence as well as the Justice Department's inaction against Cleveland Steel in the related criminal matter, and attaching the mutual release. Pursuant to the terms of the dismissal, Cleveland Steel customers would have the right to participate in any sums recovered as a result of this litigation.

While the negotiations with Cleveland Steel were ongoing, plaintiffs continued to pursue their claims against Prospect. On December 2, 1993, Prospect filed a motion for summary judgment. Plaintiffs vigorously opposed Prospect's motion and submitted voluminous records, deposition transcripts and an opinion from an economist in support. Notwithstanding, the district court granted the motion on April 14, 1994. On June 27, 1994, pursuant to Fed.R.Civ.P. 23, the court gave preliminary approval to dismissing Cleveland Steel and then ordered that notice be sent to the plaintiff class of the proposed dismissal.

On the same day that the summary judgment motion was granted in favor of Prospect, Central Can filed its motion to enforce the most favored nation clause contained in its settlement agreement. Central Can contended that plaintiffs' motion to dismiss their claims against Cleveland Steel, which was pending at the time Central Can filed its motion to enforce, was a settlement. It further contended that under that settlement, Cleveland Steel did not have to pay any monies to plaintiffs, and that under the most favored nation clause of Central Can's settlement agreement, Central Can was therefore entitled to a complete refund of all monies it had paid into the settlement fund.

Plaintiffs opposed Central Can's motion to enforce and included an affidavit by plaintiffs' counsel elaborating on the reasons for their dismissal of the claims against Cleveland Steel. Central Can filed a reply and oral argument was held. At no time did Central Can seek an evidentiary hearing.

On June 27, 1994, the same day that the district court preliminarily approved the dismissal of Cleveland Steel, it also denied the motion to enforce. The district court construed the Cleveland Steel dismissal as a settlement, and it determined that the Central Can settlement agreement's most favored nation clause was not triggered, since that clause permitted settlements under different terms when "present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant in these cases is substantially lessened or reduced." The court concluded that as a result of extensive discovery, the posture of this litigation had materially changed so that the possibility of recovery against Cleveland Steel was significantly reduced or lessened, and therefore, under the clause plaintiffs were not obligated to offer Central Can the same terms as offered to Cleveland Steel. Subsequently, the court directed entry of a

---

intend to take the position that any ruling as to this matter should be binding as to their settlement agreements as well. Defendant Southline, who agreed to pay $203,000, has the most fa-

vored nation clause in its settlement agreement as well, but has not joined in seeking a refund of monies.

final judgment denying the motion to enforce pursuant to Fed.R.Civ.P. 54(b). On March 13, 1995, final approval was given dismissing all claims against Cleveland Steel.

## II.

Under the most favored nation clause, plaintiffs were required to offer Central Can terms similar to those offered to Cleveland Steel under its later settlement with plaintiffs unless:

> present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant in these cases is substantially lessened or reduced, including, but not limited to, by reason of the entry of one or more court orders in these cases or the filing of a bankruptcy or similar petition by such similarly situated defendant....

Neither plaintiffs nor Central Can contend that the language of the clause is ambiguous. In addition, plaintiffs, for the purposes of appeal, concede that Central Can and Cleveland Steel are similarly situated defendants as that phrase is used in the most favored nation clause contained within the agreement.[3]

Central Can argues that the exception does not apply when the material change in present circumstances relates to plaintiff's knowledge of the facts concerning liability. In essence, Central Can contends that facts are immutable and therefore a change in plaintiffs' awareness or understanding of such facts cannot trigger the exception. We disagree.

Under plaintiffs' complaint, each defendant was charged with conspiracy to violate the antitrust laws. When Central Can settled with plaintiffs on June 5, 1992, the parallel criminal investigation had not been completed. There had been no discovery, and only a preliminary scheduling order setting discovery deadlines was in place. Central Can, rather than litigating to determine the extent of its liability, paid a set sum in settlement of

plaintiffs' claim. Thereafter, however, plaintiffs and the remaining defendants, including Cleveland Steel, engaged in substantial discovery to determine liability. The materials discovered and expert analysis of those materials showed a range of exposure among defendants. As for Cleveland Steel, discovery revealed insufficient facts to support liability. In addition, the criminal investigation had been completed and no indictment had been returned against Cleveland Steel.

 Notwithstanding these facts, Central Can argues for a narrow construction of the clause at issue, relying on the rule of *ejusdem generis*. Under that rule, "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." Black's Law Dictionary p. 517 (6th ed.1990). Central Can argues that the instances in which Cintech may settle under different terms are limited to those instances expressly set forth in the clause: by reason of entry of an order by the court or the filing of bankruptcy by a defendant.

 The *ejusdem generis* rule only applies, however, if the provision in question does not express a contrary intent. Here, the clause provides that when

> present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant in these cases is substantially lessened or reduced, *including, but not limited to,* by reason of the entry of one or more court orders in these cases or the filing of a bankruptcy or similar petition by such similarly situated defendant....

Numerous courts have found that the use of the words "including, but not limited to," as appear in this clause, reflect such a contrary intent. For example, in *Cooper Distributing Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262 (3d Cir.1995), *Cooper* sought to enforce the rule of *ejusdem generis* against a sales reservation clause referring to sales "includ-

---

**3.** At the oral argument in the district court, plaintiffs did not concede that Central Can and Cleveland Steel were similarly situated.

ing but not limited to" sales to governmental entities, for export, etc. *Id.* at 280. *Cooper* argued that because "retail sales" were not included in the list and were not of a similar class to those types of sales listed, Amana was precluded under the language from engaging in retail sales. The Third Circuit rejected this argument, noting that the "including but not limited to" language "plainly express[ed] a contrary intent" and therefore the rule did not apply. *Id.; see also Ramirez, Leal & Co. v. City Demonstration Agency,* 549 F.2d 97, 104 (9th Cir.1976) (the "including, but not limited to" language is often used to mitigate the rule of *ejusdem generis* ).

Although case law involving most favored nation clauses is scarce, at least one court has interpreted the language, "unless present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant ... is substantially lessened or reduced," to allow for settlements based on discovery. *In re Corrugated Container Antitrust Litigation,* No. 310, 1983 WL 1839 at *7 (S.D.Tex.1983) (concluding "if present circumstances changed as events of the litigation unfolded in the criminal or civil actions, as discovery progressed, or the governing law changed, the plaintiffs were free to settle on terms more favorable to a similarly situated defendant").

Finally, we note the disfavored status of most favored nation clauses because they often inhibit compromise and settlement. *See generally* Manual for Complex Litigation (Third) § 23.23 at 182 (1995) and cases cited therein. This effect can be particularly disruptive in the orderly disposition of such complex litigation as antitrust class actions, which by their nature involve multiple defendants. For this reason, some courts have refused to recognize such clauses. *See, e.g., In re Chicken Antitrust Litigation,* 560 F.Supp. 943 (N.D.Ga.1979) (striking most favored nation clauses from antitrust settlement agreements); *see also* Manual at 182 ("court may have to consider voiding or limiting [most favored nation clauses] if enforcement becomes inequitable"). Although we do not adopt that approach here, these cases

provide further support for the result reached in this case.

**AFFIRMED.**

RYAN, Circuit Judge, dissenting.

In my judgment, the plaintiffs' settlement with Cleveland Steel triggered the most favored nations clause in the agreement between the plaintiffs and Central Can, requiring the plaintiffs to offer Central Can comparable terms. Consequently, I respectfully dissent.

### I.

The settlement agreement between the plaintiffs and appellant Central Can imposed three preconditions for application of the most-favored nations clause: (1) that the plaintiffs enter into a settlement with another defendant on terms more favorable than those accepted by Central Can; (2) that Central Can and the other defendant are similarly situated; and (3) that there has been no material change in circumstances which excuses compliance. Central Can argues that all three preconditions are met here. In response, the plaintiffs claim that their transaction with Cleveland Steel was not a settlement, and that information they learned during discovery constituted a material change in circumstances.

### A.

The first requirement for application of the most-favored nations clause is that the plaintiffs must have entered into a "settlement" with Cleveland Steel. Although the majority opinion does not explicitly decide this question, I do not believe that there can be any serious question that a dismissal with prejudice in exchange for mutual releases is a settlement. Indeed, the proposition is entirely uncontroversial. A "settlement" is "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other." BLACK'S LAW DICTIONARY 1372 (6th ed.1990). If the plaintiffs had simply dismissed Cleveland Steel, for no consideration, and without discussing the matter beforehand with Cleveland Steel, such as taking a non-suit, I would

be disinclined to call their action a settlement. If that had occurred, there would have been no communication between the parties, which is implicit in the term "settlement," and the effort and cost would have been all on the plaintiffs' side, with Cleveland Steel essentially being a recipient of largesse. But here, there was a negotiation and a bilateral exchange, a *quid pro quo.* The plaintiffs gave a dismissal with prejudice, and Cleveland Steel gave, in return, a release. Under these circumstances, it is plain that the parties reached a mutually acceptable resolution of their dispute, that is, a settlement. *See, e.g., In re General Tire and Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1079 (6th Cir.), *cert. denied,* 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *Schott Enterprises, Inc. v. Pepsico, Inc.,* 520 F.2d 1298, 1300 (6th Cir.1975).

### B.

Having determined that a settlement occurred, the remaining question we must decide is whether a plaintiff, who learns during discovery that his case against his opponent is not what he had hoped for, has encountered a material change in circumstances. I am firmly of the belief that they have not.

It is, perhaps, worth repeating at this juncture, the pertinent language of the most favored nations clause in the contract between the parties:

Plaintiffs agree that, *unless present circumstances materially change so that plaintiffs reasonably conclude that the prospect or amount of ultimate recovery from any similarly situated defendant in these cases is substantially lessened or reduced, including, but not limited to,* by reason of the entry of one or more court orders in these cases or the filing of a bankruptcy or similar petition by such similarly situated defendant, they will not enter into a settlement of their claims against any such similarly situated defendant that is more favorable to such defendant without offering similar terms to Central Can.

(Emphasis added.) Like the majority, I find this clause unambiguous. Further, I do not question the plaintiffs' claim that they learned during discovery that "the prospect or amount of ultimate recovery from [Cleveland Steel] [was] substantially lessened or reduced." Indeed, after discovery, the plaintiffs apparently concluded that the prospect of ultimate recovery had deteriorated to the level of thin-to-nonexistent.

But, it is plain to me that when a plaintiff learns of previously existing historical facts of which he was earlier unaware, this new knowledge is not a material change in the "present circumstances" that existed at the time of the settlement agreement. Obviously, Cintech's case against Cleveland Steel was *never* very good; a fact of which Cintech presumably was unaware when it filed suit, and later when it settled with Central Can. Learning that a fact is not what, earlier, one mistakenly thought it was, or hoped it would be, does not mean that the fact changed; it is only the plaintiffs' knowledge and understanding that was altered. Here, none of the facts bearing upon the liability of Cleveland Steel, or more specifically, "the prospect or amount of ultimate recovery" from Cleveland Steel, changed from the time plaintiffs settled with Central Can. As the plaintiffs' lawyers went about their business of getting ready for trial and educating themselves about the facts and the law of the case, they learned what they very likely wished they'd known when they drew the complaint for their client: that they had no reasonable hope of obtaining a judgment against Cleveland Steel, and that they never had. That revelation is not a change in the circumstances that existed before any settlement discussion was undertaken and before discovery was conducted; it was simply a change in the plaintiffs' awareness of those circumstances.

Central Can is entitled to the benefit of its bargain, despite the potentially unfortunate effect upon the prospects for settlement of all the claims involved.

### II.

I would reverse the district court's judgment.