**UNITED STATES of America, ex rel. Guy D. McCOY, Jr., and Frank Hellum, Plaintiffs,**

v.

**CALIFORNIA MEDICAL REVIEW, INC., Jo Ellen H. Ross, Larry Magna, Margaret Shea, and Alan Snodgrass, Defendants.**

No. C–88–3659–MHP.

United States District Court, N.D. California.

Dec. 5, 1990.

See also 723 F.Supp. 1363.

Thomas Steel, M. Jane Lawhon, San Francisco, Cal., for plaintiffs.

Stephen A. Shefler, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., John Bolton, Michael F. Hertz, Ronald H. Clark, Richard G. Vartain, U.S. Dept. of Justice, Washington, D.C., for U.S.

Michael L. Lipman, Coughlan, Semmer & Lipman, San Diego, Cal., for Alan L. Snodgrass.

William E. Grauer, Gray, Cary, Ames & Frye, San Diego, Cal., for Margaret A. Shea.

S. Thomas Pollack, Wendy A. Wolf, Irell & Manella, Los Angeles, Cal., Gerald D. Stern, Brown & Bain, Palo Alto, Cal., for Jo Ellen H. Ross.

Barry J. London, Douglas R. Schwartz, Daniel King, Lillick & Charles, San Francisco, Cal., for California Medical Review.

Susan B. Jordan, Ann C. Moorman, Law Offices of Susan B. Jordan, Ukiah, Cal., for Larry Magna.

## OPINION

PATEL, District Judge.

This action under the False Claims Amendments Act of 1986, 31 U.S.C. §§ 3729–3733, was filed by relators Guy D. McCoy, Jr. and Frank Hellum on September 16, 1988. The matter is now before the court on motions by defendants and the United States to hold a hearing in camera on the fairness of a proposed settlement and to seal all briefs related to the hearing. In addition, the relators seek discovery with regard to the proposed settlement.

Having considered the memoranda and the arguments of the parties, the court DENIES the motions by the United States and the defendants to hold the settlement

hearing in camera and GRANTS plaintiffs' request for discovery, as outlined below.

BACKGROUND

Relators McCoy and Hellum are former employees of defendant California Medical Review, Inc. ("CMRI"). Acting as qui tam plaintiffs under the False Claims Amendments Act of 1986 ("Act"), 31 U.S.C. §§ 3729–3733, relators filed this action in September 1988, alleging fraudulent practices by CMRI in violation of the Act. On January 3, 1989, pursuant to 31 U.S.C. § 3730(b)(4)(A), the United States entered its appearance and took over the action. The United States filed its first amended complaint on March 22, 1989.

The United States, suing on behalf of the Health Care Financing Administration ("HCFA") of the Department of Health and Human Services ("HHS"), seeks damages and civil penalties arising from false claims and reports allegedly submitted by CMRI to HCFA. Under 42 U.S.C. §§ 1320c–1 to 1320c–13, HCFA is responsible for administering certain aspects of the Medicare program, in particular the Prospective Payment System ("PPS"). Under the PPS scheme, each state has one Peer Review Organization ("PRO"), which contracts with HHS to monitor and review hospital discharge payments under the Medicare program. The PROs review each discharge case under HCFA's regulations, denying any inappropriate discharge payments. *See* 42 C.F.R. §§ 466.83–.104 (1989). The crux of the United States' case is the allegation that CMRI and its personnel, without performing this required review, fraudulently certified to HCFA that the review had been completed.

Plaintiffs allege that defendants employed a procedure called "autocertification," which involved stamping the identification number of a CMRI Review Coordinator or District Review Manager on a discharge, although neither that CMRI employee nor any other had in fact reviewed the discharge. Second Amended Complaint, ¶¶ 28, 31. The United States alleges that, pursuant to this autocertification system, defendants falsely claimed that 51,094

reviews were performed between August 1, 1986 and September 30, 1986. *Id.* at ¶ 31. Approximately 30,000 discharges were identified as reviewed by defendant Alan Snodgrass alone. *Id.*

The United States and defendants have now reached agreement on a proposed settlement of the civil action in this case.[1] Plaintiffs McCoy and Hellum oppose the proposed settlement and request discovery on the matter. The United States and defendants have moved that the hearing on the proposed settlement agreement be held in camera and that all briefs filed in connection with the hearing be sealed; plaintiffs McCoy and Hellum oppose this motion.

DISCUSSION

I. *The Settlement Hearing*

Defendants and the United States argue that good cause exists to hold the settlement hearing in camera and to seal filings related to the hearing because publicity concerning the hearing might taint witnesses and jurors in this civil action and in the criminal prosecution of Alan Snodgrass. Defendants also assert that "if the Court does not protect the settlement approval process from disclosure, the reputations of the defendants will be falsely impugned by relators' counsel's assessment of the underlying facts, exposing them to serious censure and public ridicule." Def. MPA at 5:24–6:3. Both defendants and the United States argue that neither common law nor the first amendment justifies public access to the settlement hearing.

The legislative history of the 1986 amendments to the False Claims Act indicates that they were enacted in response to a steady rise in fraud in government programs and procurement and a failure of the government to detect and prosecute such violations. S.Rep. No. 345, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code Cong. & Admin.News at 5266, 5266–73. The False Claims Amendments Act was therefore designed to "enhance the Government's ability to recover losses sustained as a result of fraud against the

---

1. Defendant Alan Snodgrass also faces criminal     prosecution.

Government." *Id.* at 5266. One of the principal features of the Act was a strengthening of the role of qui tam plaintiffs in actions brought under the False Claims Act. *See* 132 Cong.Rec. 29,321 (1986) (Statement of Rep. Berman). This strengthening reflected Congress' belief that "[i]n the face of sophisticated and widespread fraud, ... only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds." S.Rep. No. 345, *supra,* at 5267.

■ 31 U.S.C. § 3730 gives the government the right to intervene in civil actions brought by individual or qui tam plaintiffs under the False Claims Amendments Act. With regard to settlement, the Act provides as follows:

> The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. *Upon a showing of good cause,* such hearing may be held in camera.

31 U.S.C. § 3730(c)(2)(B) (emphasis added). The language of the statute makes it clear that there is a presumption in favor of open settlement hearings. Settlement hearings will be held in camera only when there has been a showing of good cause; the burden to show good cause is clearly on the moving party.

■ The term "good cause" is not defined in the Act. Moreover, neither the parties nor the court have been able to identify any legislative history which sheds light on what Congress intended when it employed this term. It is axiomatic that when a term of common currency such as "good cause" is not defined in a statute or its legislative history, the court may look for guidance to other statutes and authority where the term has been defined.

The court finds decisional authority concerning Federal Rule of Civil Procedure 26(c) to be especially enlightening. Rule 26(c) provides that, upon a showing of good cause, a court may act to prevent public disclosure of discovery which may cause a person annoyance, embarrassment, oppression, or undue burden or expense. Courts have found that the "good cause" requirement of Rule 26(c) is met "by a showing that disclosure will work a clearly defined, specific and serious injury." *In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.,* 101 F.R.D. 34, 40 n. 7 (C.D.Cal.1984) (citing *United States v. Hooker Chems. & Plastics Corp.,* 90 F.R.D. 421 (W.D.N.Y.1981) and *Essex Wire Corp. v. Eastern Elec. Sales Co.,* 48 F.R.D. 308 (E.D.Pa.1969)). The good cause showing must consist of "a particular and specific demonstration of fact." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 2201 n. 16, 68 L.Ed.2d 693 (1981). Conclusory statements will not suffice. *Id.*

■ Defendants and the United States have failed to make a showing of good cause under the standard discussed above or under any other of which the court can conceive. The only arguments proffered in favor of closing the settlement hearing to the public are that publicity surrounding the hearing might in some way affect potential witnesses and jurors in this civil action and in the criminal prosecution of Alan Snodgrass, and that the reputation of defendants might be damaged.[2] Such arguments are not sufficient in this case to constitute a particular and specific showing and do not identify a specific serious injury

---

**2.** These arguments, made by the United States in their filings with this court, were significantly undercut by the statements made by the United States and defendants at the hearing on this motion. When asked by the court to specify precisely how the criminal prosecution of Alan Snodgrass would be tainted by an open settlement hearing, the United States conceded that nothing in the parties' briefs concerning the fairness of the settlement would prejudice the criminal case. The United States took the position that there was no way to know whether the subsequent civil or criminal proceedings would be tainted until the hearing on the fairness of the settlement actually took place. The court finds this a singularly unpersuasive rationale for holding the fairness hearing in camera. Counsel for defendant CMRI was able to add nothing of substance to the arguments of the United States.

which will result from public access. While the court sees little potential for tainting of subsequent civil or criminal proceedings, to the extent that this is a possibility it can certainly be addressed through voir dire of potential jurors and cross examination of witnesses. Nor is the court persuaded by protestations concerning the defendants' reputation; such concerns are inherent in all adverse litigation.

The court notes that the arguments advanced by defendants and the United States could be made in virtually every action brought under the False Claims Act, since the Act by its very nature involves civil and criminal proceedings where reputations are at stake. If this constituted good cause for in camera proceedings, settlement hearings would be closed in most if not all False Claims Act cases. Yet such a result would contradict the language of the Act itself, which clearly implies that settlement hearings will be open to the public absent a special showing.

Moreover, qui tam plaintiffs McCoy and Hellum have taken the position that the proposed settlement between the United States and defendants is grossly inadequate. Rel.Opp. to Prop. Settlement at 5. In light of this accusation and of the fact that the 1986 amendments to the Act were motivated in large part by Congress' concern about the government's failure to effectively prosecute fraudulent claims for public funds, the court finds good reason for the proposed settlement to be subjected to public scrutiny as the Act envisioned.

Given that defendants and the United States have failed to make a "good cause" showing as required by section 3730(c)(2)(B), the court need not detain itself with a lengthy discussion of the common law and constitutional arguments made by qui tam plaintiffs. It is worth noting, however, that the position of the United States and defendants runs contrary to existing authority on public access to judicial proceedings. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court recognized a common law and first amendment right of access to

criminal trials. *Id.* at 573, 580, 100 S.Ct. at 2825, 2829. Subsequently, the Court made it clear that the right of access to judicial proceedings is not limited to trials. *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 9, 106 S.Ct. 2735, 2740–41, 92 L.Ed.2d 1 (1986) ("*Press-Enterprise II*").

While the *Richmond Newspapers* decision did not explicitly find a right of access in the civil context, Justice Burger, in his plurality opinion for the Court, noted that historically both criminal and civil trials have been presumptively open. *Richmond Newspapers*, 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17. The concurring opinions of Justices Brennan and Stewart also noted the potential application of the Court's analysis in the civil context. *Id.* at 590, 599, 100 S.Ct. at 2834–35, 2839–40. This court agrees with the Sixth Circuit's conclusion that the analysis in *Richmond Newspapers* applies to both civil and criminal proceedings. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). *See also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir.1988) (recognizing public right of access to summary judgment proceedings in defamation suit); *Publicker Indust., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir.1984) (recognizing public right of access to hearing on preliminary injunction); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir.1984) (recognizing public right of access to proceedings on motion to terminate derivative claims in civil suit).

While the right of access to judicial proceedings is not absolute, it "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2741 (quoting *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) ("*Press-Enterprise I*")).

The United States and defendants have identified no such "overriding interest."

As discussed above, their concerns about the tainting of potential witnesses and jurors in related future civil and criminal proceedings can be addressed through voir dire and cross-examination.[3] Defendants' argument with regard to reputation is equally misguided, as numerous courts have ruled that harm to a party's reputation is not a sufficient justification for the denial of public access to judicial proceedings. *See, e.g., Brown & Williamson Tobacco,* 710 F.2d at 1179; *In re Search Warrant for Northwest EnviroServices, Inc.,* 736 F.Supp. 238, 239 (W.D.Wash. 1989). Moreover, this action, arising from Congress' efforts to combat fraudulent claims for public funds, clearly is of great public interest. As such, the argument for public access to these judicial proceedings is stronger still. *In re Search Warrant,* 736 F.Supp. at 239; *In re Coordinated Pretrial Proceedings,* 101 F.R.D. at 39.

■ The moving parties' request to seal documents related to the settlement hearing fares no better. The Ninth Circuit has recognized a common law right of access to judicial records. *EEOC v. Erection Co.,* 900 F.2d 168 (9th Cir.1990); *Valley Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289, 1292 (9th Cir.1986). There is a "strong presumption" in favor of public access to such records which may be overcome only by "articulable facts known to the court." *Valley Broadcasting Co.,* 798 F.2d at 1293 (quoting *United States v. Edwards,* 672 F.2d 1289, 1294 (7th Cir. 1982)). The presumption in favor of access is even greater where the case is a matter of public business and where the public's right to evaluate the conduct of its government is at stake. *Erection Co.,* 900 F.2d at 171–172 (Reinhardt, J., concurring in part and dissenting in part). Clearly there are no facts known to the court in this case which can overcome the presumption in favor of access.

---

**3.** Should circumstances arise during the course of the settlement hearing whereby the court determines that a more serious issue is raised, especially with regard to the criminal prosecution of Alan Snodgrass, the court can at that time adopt narrowly tailored measures to safe-

## II. *Plaintiffs' Request for Discovery*

### A. *Right to Discovery*

■ Qui tam plaintiffs McCoy and Hellum have requested a hearing and discovery on the proposed settlement agreement between the United States and defendants. A review of the statute and its legislative history indicates that this request should be granted.

Section 3730(c)(2)(B) permits the government to settle a False Claims Act action "notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). As the legislative history of the 1986 Amendments Act points out, this is the same test applied by the courts in reviewing settlements of class action claims. 132 Cong.Rec. 29,322 (1986).

The 1986 amendments to the False Claims Act strengthened the role of qui tam plaintiffs by making them parties to the action throughout the litigation, even where the government intervenes and takes over primary responsibility for prosecution. 31 U.S.C. § 3730(c)(1). The Act's legislative history indicates that it was Congress' intent that qui tam plaintiffs play an active role in settlement hearings.[4] The Senate Judiciary Committee, in its report on the legislation, stated as follows:

> Subsection (c)(1) provides *qui tam* plaintiffs with a more direct role not only in keeping abreast of the Government's efforts and protecting his financial stake, but also in acting as a check that the Government does not neglect evidence, cause unduly [sic] delay, or drop the false claims case without legitimate reason.... [T]he person who brought the action may formally object to any motions to dismiss or proposed settlements between the Government and the defendant.

---

guard defendant Snodgrass' sixth amendment right to a fair trial.

**4.** This is not surprising, given that the statute makes the qui tam plaintiffs parties to the action.

S.Rep. No. 345, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News at 5290–91. Representative Howard Berman, in a report concerning the legislative history of the False Claims Amendments Act introduced into the Congressional Record, stated:

The person initiating the action is given an opportunity to object to the settlement, including the development and presentation of evidence at a hearing, before the court makes its final determination as to fairness.

132 Cong.Rec. 29,322 (1986).

Thus there can be no question but that plaintiffs McCoy and Hellum may raise objections to the proposed settlement at the fairness hearing. The court views the right to limited discovery as a corollary to plaintiffs' right to object to the settlement. Based on the representations of the parties in their filings with the court and at the hearing on this motion, it appears that plaintiffs were not included in settlement negotiations and have not been fully informed as to how the United States calculated the damages which are the basis of the proposed settlement. Buckley Decl. ¶ 2. Plaintiffs thus lack sufficient information to formulate objections to the proposed settlement agreement.

While there appears to be no authority which speaks to this issue, it is noteworthy that authority does exist for the granting of discovery to plaintiff objectors in class action settlement proceedings. *See, e.g., In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1123–24 (7th Cir.) (trial court abused its discretion when it did not permit objectors discovery concerning settlement negotiations), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). Furthermore, it is difficult to see how the court could properly evaluate a settlement that is "fair, adequate, and reasonable under all the circumstances" without the opportunity for some disclosure. To exclude qui tam plaintiffs from some reasonable discovery that will shed light on the settlement and enlighten the court invites collusion under a statute that was intended to achieve the opposite purpose. The court does not mean to suggest that there is collusion here, but the principle underlying the statute mandates openness in settlement as well as other aspects of the proceedings. Limited discovery regarding the fairness of the proposed settlement therefore is appropriate here.

**B. *Parameters of Discovery***

█ While the court recognizes plaintiffs' right to discovery on the fairness of the proposed settlement, the discovery must be limited to effectuate the goal of allowing plaintiffs meaningful participation in the fairness hearing without unduly burdening the United States or the defendants or causing unnecessary delay. Plaintiffs have submitted to the court interrogatories and requests for production related to the settlement which were previously served on defendants. The court has reviewed these discovery documents, has determined which interrogatories and requests for production the defendants must respond to, and has issued a separate order in this regard.

At the hearing on this motion, counsel for plaintiffs also requested that plaintiffs be allowed to depose employees of defendant CMRI and the Health Care Financing Administration ("HCFA"). Having heard the arguments of the parties concerning this request, the court has determined that a limited number of depositions are appropriate. The court will allow plaintiffs to depose three employees of defendant CMRI and two employees of HCFA. Plaintiffs are to submit a list of witnesses to be deposed within fifteen days of receipt of responses to the discovery ordered by this court.[5] The parties to this action should meet prior to that date to agree on a list of witnesses to be deposed.

IT IS SO ORDERED.

---

**5.** The court's separate discovery order requires defendant CMRI to respond within thirty days to the specified interrogatories and requests for production.