**Alan HEMPHILL, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**SAN DIEGO ASSOCIATION OF REALTORS, INC., et al., Defendants.**

**No. 04–CV–1495–BEN(JMA).**

United States District Court, S.D. California.

Jan. 3, 2005.

Daniel J. Mogin, Mogin Law Firm, San Diego, CA, for plaintiffs.

John T. Brooks, Luce Forward Hamilton and Scripps, Michael J. Hickman, Musick Peeler and Garrett, San Diego, CA, Robert D. Butters, Arnstein and Lehr, Chicago, IL, David S. Bright, White and Bright, Escondido, CA, Jon F. McKinley, El Cajon, CA, for defendants.

**ORDER GRANTING IN PART AND DE-NYING IN PART OBJECTORS' MO-TIONS TO COMPEL DISCOVERY**

ADLER, United States Magistrate Judge.

### I. *Introduction and Background*

On September 24, 2004, the Honorable Roger T. Benitez issued an order granting preliminary approval of the class settlement in this case. (Order Granting Preliminary Approval Of Class Settlement, Conditionally Certifying Settlement Class, Appointing Class Counsel, Appointing Settlement Administrator, Scheduling A Hearing On Preliminary Approval Of Settlement, Providing For Opt–Outs and Objections And Staying Further Proceedings [Doc. No. 39] ("Preliminary Approval Order").) In the Preliminary Approval Order, Judge Benitez certified a settlement class; appointed attorneys Daniel J. Mogin and Alexander M. Schack as Class Counsel after finding that they would fairly and adequately represent the interests of the class; found the proposed settlement to be the product of "arm's length, serious, informed and non-collusive negotiations between experienced and knowledgeable counsel"; approved a form of settlement notice to the class and the procedures for giving notice of the settlement to the class; and established a schedule leading to a hearing on final approval of the settlement, which he scheduled for January 28, 2005. (*Id.*) Judge Benitez further provided that any objections to the proposed settlement were to be submitted by December 7, 2004, and that briefs in connection with the final approval hearing were to be filed by January 14, 2004. (*Id.* at 7–8.)

The Court-approved form of settlement notice was mailed to over 27,000 class members, with less than 8.5% of the mailed notices being returned, and a summary notice was published twice in the San Diego Union. (Defendants' Opposition To Objectors' Motion For Discovery [Doc. No. 61] ("Def's.Brf.") at 2–3; Declaration of Dennis A. Gilardi, Jr. [Doc. No. 65] ("Gilardi Decl."), ¶¶ 2–4, 6.) The settlement notices and other pertinent information concerning the settlement and the final approval hearing were included on a website established by the settlement administrator. (*Id.*, ¶ 5.) In addition, each Defendant published the summary notice in a general membership publication, put the settlement notice and other information about the settlement and the final approval hearing on their websites, and provided a link on their websites to the settlement administrator's website. (Declaration of Lorrie Mowatt [Doc. No. 61] ("Mowatt

Decl."), ¶ 2; Declaration of Diane McMillan [Doc. No. 62] ("McMillan Decl."), ¶ 3; Declaration of Mark Marchand [Doc. No. 63] ("Marchand Decl."), ¶ 3; Declaration of Renee Wilson [Doc. No. 64] ("Wilson Decl."), ¶ 5; Declaration of Share Jackson [Doc. No. 66] ("Jackson Decl."), ¶ 4; Declaration of John Holley [Doc. No. 59] ("Holley Decl."), ¶ 2.) The settlement administrator's website has received over 8000 "hits" and Defendants' websites have received thousands of additional "hits", including over 342,000 views of Defendant San Diego Association of Realtors' home page alone. (Gilardi Decl., ¶ 5; McMillan Decl., ¶ 3; Wilson Decl., ¶ 5; Marchand Decl. at 2, ¶ 3; Mowatt Decl., ¶ 2.) In response to this notice program, only nine objections were received and an additional twenty-four class members submitted requests for exclusion. (Gilardi Decl., ¶¶ 8, 9.)

Two sets of objectors submitted extensive objections to the class settlement.[1] The Stark Objectors submitted a sixteen-page objection specifying nine grounds for objecting to the settlement, while Mr. Easton submitted an eight-page objection specifying four main grounds, with multiple subparts for each ground, for objecting to the settlement.[2] (Declaration of Allison F. Borts [Doc. No. 54] ("Borts Decl."), Exhibit A; Objections By Tony Easton ("Easton Objection"), attached to Declaration of David Barry [Doc. No. 58] ("Barry Decl.").) Movants now seek an order compelling wide-ranging discovery from Class Counsel and Defendants. The Court, having thoroughly reviewed the moving and opposition papers, and the exhibits and declarations filed therewith, makes the following findings and issues the rulings set forth below.

## II. Standards for Discovery by Objectors to a Class Action Settlement

Class members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement. *See e.g., In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D.Ga.1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C.2001); *In re Ford Motor Co. Bronco II Prods. Liability Litig.*, Civ. A. No. MDL–991, 1994 WL 593998, 1994 U.S. Dist. LEXIS 15867 (E.D.La. Oct. 28, 1994); *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y.1964); *see generally* A. Conte and H. Newberg, *Newberg on Class Actions* § 11:57 at 184 (4th ed.2002) ("*Newberg*"). "While objectors are entitled to 'meaningful participation' in the settlement proceedings, *Girsh v. Jepson*, 521 F.2d 153, 158 (3rd Cir.1975) and 'leave to be heard,' *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977), they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.' " *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n. 6 (6th Cir.1984), *citing Cotton*, 559 F.2d at 1331. Objectors should be allowed "meaningful participation in the fairness hearing without unduly burdening the parties or causing an unnecessary delay." *Domestic Air*, 144 F.R.D. at 424. The fundamental question is

---

1. Objectors Easton, Tierney, Holmes, Grangatto and Hoadley (the "Easton Objectors") are represented by attorney David Barry, who was counsel for named plaintiffs and proposed class representatives Arleen Freeman and James Alexander in the case that began this litigation saga. (*Freeman, et al. v. San Diego Assoc. of Realtors*, Case No. 98–CV–0139–BEN(JMA) ("*Freeman*").) No class was ever certified in *Freeman*, as Freeman and Alexander were found to be inadequate class representatives by the Court on four occasions. (*Id.*, Doc. Nos. 150, 171, 512, 658.) Freeman and Alexander settled their individual claims during a settlement conference supervised by the Magistrate Judge on October 29, 2004. (*Id.*, Doc. No. 730.) As part of that settlement, Mr. Barry received a negotiated amount from defendants for his attorney's fees, and Freeman and Alexander agreed not to object to or interfere with final approval of the class settlement in this case. Objectors Stark, McNeill and Donboli (the "Stark Objectors") are represented by attorney Allison F. Borts, and have filed a separate motion to compel discovery. [Doc. Nos. 52–54] The Easton Objectors and the Stark Objectors are collectively referred to in this Order as "Movants."

2. Counsel for the Easton Objectors states that the objections submitted by all five of the Easton Objectors are substantially similar. (*See* Objectors' Memorandum In Support Of Motion For Discovery In Aid Of Objections To Hemphill Settlement [Doc. No. 57] ("Easton Objectors' Brf.") at 1.)

whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement. *In re General Tire & Rubber Co. Sec. Litig.,* 726 F.2d at 1084 n. 6, *citing Detroit v. Grinnell,* 495 F.2d 448, 463–468 (2d Cir.1974).

The criteria relevant to the Court's decision whether to permit objectors to conduct discovery are "the nature and amount of previous discovery, reasonable basis for the evidentiary requests, and number and interests of objectors." *Domestic Air,* 144 F.R.D. at 424, *quoting Newberg* § 11.56 at 476 (2d ed.1985). Where the evidence submitted in support of the settlement is the result of truly adversarial proceedings and where the "comprehensiveness" of the records developed by the proponents increases, the objector has a greater burden to show the necessity of additional evidence. *Id.* § 11:57 at 185; *see also Lorazepam,* 205 F.R.D. at 27 n. 5 (extensive prior discovery weighs against movants' request); *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380 (S.D.N.Y.1972), judgment aff'd in part, rev'd in part on other grounds, 495 F.2d 448 (2d Cir.1974) (objector's request for discovery denied where answers could be found in record of proceedings). In addition, where the objectors represent only a small percentage of the class, the likelihood of the court granting their discovery requests decreases because the court will give great weight to the interests of the majority of the class members. *Newberg* § 11:57 at 186; *see also Lorazepam,* 205 F.R.D. at 27 n. 5 (fact that objectors represented only a small number of thousands of class members "does not aid the movants' request").

Finally, discovery of evidence pertaining to settlement negotiations is appropriate only in rare circumstances. Because "settlement negotiations involve sensitive matters," the courts have consistently applied the principle that " 'discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.' " *Lobatz v. U.S.West Cellular of California, Inc.,* 222 F.3d 1142, 1148 (9th Cir.2000), *quoting Mars Steel Corp. v. Continental Illinois Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir.1987); *accord Domestic Air,* 144 F.R.D. at 424; *Thornton v. Syracuse*

*Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992); *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 146 (S.D.Ohio 1992).

## III. *Application of the Standards for Discovery by Objectors to a Class Action Settlement*

### A. *Evaluation Of Factors Bearing Upon Objectors' Discovery Requests Generally*

As noted in section II, *supra,* the factors the Court must consider in determining whether Movants should be allowed to conduct discovery include the nature and amount of previous discovery and the number and interests of objectors. *Domestic Air,* 144 F.R.D. at 424, *quoting Newberg* § 11.56 at 476 (2d ed.1985). With respect to the first factor, there is no question that there is an extensive record in this litigation, which was commenced in 1998 with the filing of *Freeman,* and that there has been substantial discovery conducted in an adversarial setting. (*See Freeman,* Doc. Nos. 1–733.) The litigation has been extremely hard-fought over a period of seven years, both at the district court level and the appellate level. (*Id.*) The comprehensive nature of the record weighs against affording objectors additional discovery. *Lorazepam,* 205 F.R.D. at 27 n. 5; *Newberg* § 11:57 at 185.

In addition, the number of objectors to the settlement is very small. As discussed in section I, *supra,* only nine objections have been submitted (along with 24 opt-outs) despite the mailing of over 27,000 settlement notices, the publication on two occasions of a summary settlement notice, and thousands of "hits" received by the settlement administrator's website and Defendants' websites. The fact that Movants represent only a small number of the thousands of class members also weighs against Movants' discovery requests. *Lorazepam,* 205 F.R.D. at 27 n. 5; *Newberg* § 11:57 at 185.

Against this backdrop and applying the principles set forth in section II of this Order, the Court will now consider the basis for the categories of discovery sought by Movants.

B. *The Record Does Not Support Movants' Assertions That The Settlement Is Collusive*

 Movants contend that the class settlement is collusive, relying heavily on this argument in support of their discovery requests. (Objectors Stark, McNeill And Donboli's Memorandum Of Points And Authorities In Support Of Motion To Compel Discovery [Doc. No. 53] ("Stark Objectors' Brf.") at 2–4.; Easton Objectors' Brf. at 2, 4.) The Court disagrees and finds, for the following reasons, that Movants have not carried their burden of adducing evidence from other sources that the settlement negotiations were collusive.

As a general principle, "the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *See Newberg* § 11.51 at 158–159. Here, the settlement negotiations between Class Counsel and Defendants were closely supervised by the Court-appointed mediator, Maxwell Blecher, and the Magistrate Judge. While the Stark Objectors contend that collusion is demonstrated by the fact that the settlement was reached before this case was filed (Borts Decl., ¶ 8.), the record supports neither their rendition of the settlement negotiations nor their conclusion. Class Counsel began to participate in mediation efforts only after they had filed their motion to intervene in *Freeman,* and at a time when defendants in *Freeman* were opposing Mr. Hemphill's motion to intervene in that action. (*Freeman,* Doc. Nos. 689, 707; Declaration of Charles B. Cohler ("Cohler Decl."), ¶ 5, attached to Memorandum Of Points And Authorities In Support Of Plaintiff Hemphill's Opposition To Objectors' Motion To Compel Discovery [Doc. No. 67] ("Plaintiff's Brf.").) During the pendency of Mr. Hemphill's motion to intervene, mediation efforts under the supervision of Mr.

Blecher and the Magistrate Judge included potential settlement of the proposed complaint-in-intervention (i.e., a potential settlement on behalf of the class the proposed intervenor, Mr. Hemphill, sought to represent). (Cohler Decl., ¶¶ 6–7.) As Mr. Cohler points out, there was no one with whom Defendants could have negotiated a potential class-wide settlement other than Mr. Hemphill and his counsel since the named plaintiffs in *Freeman* were proceeding only with respect to their individual claims after their efforts to be certified as class representatives had been denied on four separate occasions. (*Id.,* ¶ 8.) In addition, agreement on the terms of the class settlement was not reached until September 23, 2004, after several months of Court-supervised negotiations, and two months after Mr. Hemphill filed a separate class action complaint. (Declaration of Daniel J. Mogin ("Mogin Decl."), ¶ 4, attached to Plaintiff's Brf.)

While Movants vigorously assert that the settlement terms are not fair, reasonable and adequate to the class—which is the fundamental issue to be determined at the final approval hearing on January 28, 2005—the history of the negotiations that resulted in the class settlement do not support Movants' assertion that those negotiations were collusive. Instead, the history of the negotiations and the record before this Court support Judge Benitez's findings in the Preliminary Approval Order that the proposed settlement is "the product of arm's length, serious, informed and non-collusive negotiations between experienced and knowledgeable counsel." (Preliminary Approval Order at 3.)

 Discovery of settlement negotiations is proper only where the party seeking it "lays a foundation by adducing from other sources evidence that the settlement may be collusive." *Lobatz,* 222 F.3d 1142, 1148, *quoting Mars Steel,* 834 F.2d at 684. Movants have not made the required showing.[3]

---

3. Contrary to Movants' arguments, *In re Gen. Motors Corp, Engine Inter. Lit.,* 594 F.2d 1106 (7th Cir.1979) does not support their discovery requests. In *General Motors,* negotiations with one class counsel were carried out in violation of the district court's order. *Id.* at 1126. Unlike the situation in *General Motors,* there were no irregular negotiations in violation of any court order here. Indeed, the negotiations were conducted under the direction and close supervision of the Court-appointed mediator and the Magis-

trate Judge. As the court in *Mars Steel* aptly put it, "There is no indication of such hanky-pank here [as existed in *General Motors*]." 834 F.2d at 684. *United States ex rel. McCoy v. California Medical Review, Inc.,* 133 F.R.D. 143 (N.D.Cal. 1990), is also distinguishable. In *McCoy,* the *qui tam* plaintiff, who remained a party to the action under the False Claims Act even when the government intervened and took over primary responsibility for the prosecution of the case, was

As a result, they are not entitled to any discovery of settlement negotiations, including communications, correspondence and e-mails between Class Counsel and counsel for Defendants.

### C. Discovery Regarding The Adequacy Of Class Counsel And The Class Representative, Including Information Contained In Class Counsel's Files

■ Movants seek discovery of a wide variety of information, including depositions of Class Counsel, Mr. Hemphill and even a paralegal employed by Mr. Schack, in order to "test" the adequacy of Class Counsel and Mr. Hemphill. The central premise underlying Movants' asserted need for this discovery is once again that Class Counsel acted collusively, in derogation of the interests of the class, during settlement negotiations. (see Stark Objectors' Brf. at 3–4; Easton Objectors' Brf. at 2, 4.) Movants seek to discover virtually everything contained in Class Counsel's files, including informal information on which the settlement agreement was based, expert reports and communications between Class Counsel and experts, Class Counsel's retainer agreement, Class Counsel's time sheets, documents reflecting Mr. Hemphill's time spent on the case and how he came to be represented by Class Counsel, as well as pleadings filed and formal discovery conducted (including deposition transcripts) in *Freeman* and this case.[4] (Stark Objectors' Brf. at 2–5; Easton Objectors' Brf. at 2–5.)

As the Court has already found, Movants have not adduced evidence from other sources indicating that the settlement is collusive. As a result, their central premise for

this category of discovery fails, just as it did with respect to discovery of settlement negotiations. *Lobatz,* 222 F.3d 1142, 1148. Furthermore, there are additional reasons why the Court declines to order discovery going to the adequacy of counsel. First and foremost, as the court stated in *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195 (5th Cir.1981):

> [t]he district court's most important function in reviewing compromises of class actions is its consideration of the settlement terms....It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting. If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance.

*Id.* at 212 (citation omitted).

In *Corrugated Container,* objections were interposed to a settlement where Plaintiffs' counsel had themselves conducted no formal discovery. *Id.* at 204. The court, noting that Plaintiffs' counsel had access to a variety of information, held that their failure to conduct discovery was not indicative of a lack of adequacy on their part:

> Even assuming there was an imbalance of information between the defendants and the plaintiffs at the bargaining table, this would not in itself invalidate the settlements. We think in a case such as this, the trial court may legitimately presume

---

excluded from settlement negotiations and lacked sufficient information to formulate objections to the proposed settlement agreement. Here, it is evident that Movants possess sufficient information to have formulated extensive objections to the proposed settlement. (*See* Easton Objection, attached to Barry Decl. at 10–17; Stark Objectors' Objection, attached to Borts Decl. as Exhibit A.)

4. Both Movants and Class Counsel question the motives and ethics of the other. The Easton Objectors contend, as Mr. Barry did on behalf of his clients Freeman and Alexander in *Freeman,* that Class Counsel are subject to disqualification due to an asserted conflict of interest in undertaking to represent Mr. Hemphill in derogation of their responsibilities to Freeman and Alexan-

der. (Easton Objectors' Brf. at 2.) Class Counsel contend that Mr. Barry violated the spirit, if not the letter, of the settlement agreement in *Freeman* by filing an objection to the class settlement in this case on behalf of new clients after agreeing on behalf of Freeman and Alexander not to object to or interfere with the class settlement, as well as engaging in other conduct that violates various court orders and Rule 11. (Plaintiff's Brf. at 6–8.) Both Class Counsel and Defendants question Mr. Barry's purposes, stating that he is disgruntled due to the fact that he was not able to obtain class certification in *Freeman* after repeated efforts and now seeks to sabotage the class settlement out of improper motives. (*Id.;* Defendants' Brf. at 2.) The Court reaches no conclusion as to these charges, nor need it do so to determine the issues presented by the motions.

that counsel's judgment "that they had achieved the desired quantum of information necessary to achieve a settlement," ...is reliable. Of course, if the record points unmistakably toward the conclusion that the settlement was the product of uneducated guesswork, a court may be acting within its discretion in disapproving the agreement without ever considering whether the agreement's terms are adequate. But since counsel had access to data, that is not our case.

In general, we think a settlement should stand or fall on the adequacy of its terms. In a very real sense, a review of the terms provides a check on counsel's evaluation of the sufficiency of his working knowledge. If the terms are fair, the court may reasonably conclude that counsel did perform adequately. We stress that this is not to say that a district court may approve a settlement whose adequacy is insufficiently documented at the settlement approval hearing. In fact, where it appears that counsel was relying on judgment bolstered by only a small amount of information, the district court should be especially thorough in its review of the fairness and adequacy of the settlement terms.

*Id.* at 211 (citation omitted).[5]

Mr. Hemphill and Class Counsel, as the proponents of the settlement, have the burden of sufficiently documenting that the settlement terms are fair, reasonable and adequate to the class. *Newberg* § 11:42 at 118–19. In so doing, they may rely on the discovery conducted in *Freeman* and any other evidence in the voluminous record of this litigation they deem necessary to make the required showing. Either the settlement terms will, in the District Judge's opinion, be fair, reasonable and adequate to the class based on this showing or they will not, and that will be true irrespective of what is contained in Class Counsel's files. Discovery of such information (including expert reports and communications with experts, deposition transcripts and other formal discovery, informal information on which the settlement is based and depositions of Mr. Hemphill, Class Counsel, and Mr. Schack's paralegal) is neither necessary for a determination of whether Class Counsel are adequate nor is it necessary to provide the District Judge with information sufficient to determine whether the settlement is fair, reasonable and adequate to the class.[6]

Movants' request for Class Counsel's time sheets is also denied. In *Lobatz*, the Ninth Circuit considered the issue of how a district court should review a request for an award of attorney's fees and costs for class counsel where, as here, "the defendant has agreed that those fees and costs will be paid separately from the class settlement, and the defendant has agreed not to object to class counsel's fee and cost request so long as the request does not exceed a negotiated amount." 222 F.3d at 1148. The district court in *Lobatz* carefully reviewed class counsel's documented costs and summaries of the time they spent on the case without examin-

5. While Movants challenge Mr. Hemphill's adequacy, the Court notes that there is nothing in the record demonstrating that he fails to satisfy the test for adequacy of representation by a class representative; namely, that he be part of the class he seeks to represent and suffer the same injury as the class members. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Indeed, the District Judge has previously found that Mr. Hemphill has and will fully and adequately represent the absent members of the class. (Preliminary Approval Order at 3.)

6. As noted in the text, supra, Movants seek access to formal discovery, including deposition transcripts. Mr. Barry, as counsel for plaintiffs in *Freeman* throughout the course of this litigation is, of course, already fully aware of and possesses all formal discovery conducted in the litigation, including deposition transcripts. If the Stark Objectors wish to review any of the formal discovery from the litigation in preparation for the final approval hearing, they may obtain access to that information from Mr. Barry's files or Defendants' files upon execution of a suitable protective order. While the Stark Objectors contend that they are entitled to inspect Class Counsel's entire file as clients of Class Counsel (Stark Objectors' Brf. at 5.), they overlook the fact that they have entered an appearance in this action pursuant to paragraph 23 of the Preliminary Approval Order through their own counsel, rather than choosing to be represented by Class Counsel. *See Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 377· (N.D.Ill. 1982) ("After a court has certified a case as a class action and the time for exclusions has expired, the attorney for the class representative represents all class members who are otherwise unrepresented by counsel.").

ing class counsel's contemporaneous time records. There, as here, there was no showing of collusion. *Id.* at 1148–49. The Ninth Circuit held that "[i]n these circumstances, we conclude the district court did not abuse its discretion by not examining class counsel's contemporaneous time records, conducting a more extensive inquiry, or perhaps enlisting the services of a special master." *Id.*[7]

Movants also seek Class Counsel's retainer agreement in order to determine whether Class Counsel disclosed their fee sharing agreement in compliance with their ethical duties (Stark Objectors' Brf. at 5). However, as Class Counsel point out, Cal. Business & Professions Code section 6149 provides that written fee agreements are confidential and privileged. Even if this were not the case, the Court finds that this inquiry is not relevant to the District Judge's ultimate determination of whether the settlement terms are fair, reasonable and adequate to the class.[8]

**D.** *Discovery Of Defendants' Financial Information*

■ Movants point out that one of the justifications for the settlement is the financial inability of Defendants to pay the full anticipated judgment amount. (Stark Objectors' Brf. at 4; Easton Objectors' Brf. at 2–3.) The Court agrees that information concerning Defendants' current financial position is relevant to the District Judge's determination of whether the settlement is fair, reasonable and adequate to the class. *See Domestic Air*, 144 F.R.D. at 424 ("Insofar as defendants' financial stability and their inability to provide significant amounts of cash in settlement of this action are grounds for seeking approval of the settlement, information concerning the actual financial position of the defendant airlines is relevant to the Court's consideration of fairness."). Defendants have stated that they are prepared to produce their "current financials (most recent full year, current partial year, of balance sheets and income statements showing all financial activity, not just related to MLS)," as requested by the Easton Objectors, subject to an appropriate confidentiality agreement. (Def's. Brf. at 3–4.) The Court hereby orders that such information shall be produced to Movants by no later than *January 7, 2004,* and that Movants and Defendants shall submit an appropriate protective order for the Court's review and signature.[9]

---

**7.** In *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 286 (7th Cir.2002), the district judge had permitted the submission of the fee applications in camera. The court criticized this practice, stating that doing so "paralyzes objectors" and prevents the "beady-eyed scrutiny" of class counsel's fee application that a district judge must conduct, *Id.* By contrast, there is no secret here as to the amount of attorney's fees sought by Class Counsel, and their fee application will be provided to all interested parties, including Movants, in connection with the final approval hearing.

**8.** Mr. Barry, on behalf of the Easton Objectors, renews his argument made earlier in *Freeman* that Class Counsel should be disqualified for acting adversely to the interests of Freeman and Alexander, and seeks extensive discovery of Class Counsel and Mr. Hemphill on this basis. (*See* Easton Objection at 16–17; *see also* Easton Objectors' Brf. at 4–5.) For the reasons discussed in this section, *supra*, the Court denies the requested discovery and does not reach the issue of whether Class Counsel acted adversely to the interests of Freeman and Alexander. In any event, as demonstrated by Mr. Barry's earlier Motion to Disqualify Attorneys Schack and Mogin From Further Representation Of Alan Hemphill and the voluminous documents submitted in support of that motion (*see* Memorandum Of

Points And Authorities In Support Of Motion To Disqualify Attorneys Schack and Mogin From Further Representation Of Alan Hemphill, attached to Barry Decl. at 22–96.), it is evident that Mr. Barry already possesses ample information with which to pursue the objection raised on this ground.

**9.** Defendant Coronado Association of Realtors has already provided certain financial information (*see* Wilson Decl. at ¶¶ 2–3.), but shall supplement that information as required by the Court. The Court denies the other requested discovery in this category sought by the Easton Objectors, including the requested depositions (*see* Easton Objectors' Brf. at 2–3.), since the information Defendants have agreed to produce will provide the District Judge with sufficient facts to intelligently determine whether to approve the settlement on the ground of Defendants' purported inability to pay a full judgment, and will allow Movants to meaningfully participate in the fairness hearing without unduly burdening the parties or causing unnecessary delay. The Court further notes that the Easton Objectors claim to possess at least some of the discovery they are requesting, *including information concerning Sandicor's net worth* and the amount the defendant associations are allegedly charging for their services in excess of what other multiple

### E. *Discovery Pertaining To The Provision Of The Settlement Notice To The Class*

■ The Easton Objectors contend that they need discovery to determine whether Defendants deliberately submitted obsolete addresses to the Settlement Administrator "in hopes that few class members would be notified, few would object or opt out, and few would make claims." (Easton Objectors' Brf. at 2.) The Easton Objectors also contend they need this discovery because "it appears no effort was made to pursue correct addresses from returned mail. . . ." (*Id.*)

In response to these contentions, Defendants have filed the declarations of the settlement administrator and officers/employees of each Defendant with knowledge of the facts pertaining to the provision of the settlement notice to the class. ("Holley Decl.", ¶ 2; Jackson Decl., ¶¶ 2–4; Gilardi Decl., ¶¶ 1–7; Wilson Decl., ¶¶ 4–5; Marchand Decl., ¶¶ 4–5; McMillan Decl., ¶¶ 2–3; Declaration of Lorrie Mowat [Doc. No. 61] ("Mowat Decl."), ¶¶ 2–3; Declaration of Lynn Gabe [Doc. No. 61] ("Gabe Decl."), ¶ 2.) The declarations submitted by Defendants' officers/employees discuss the efforts made by Defendants to ensure the integrity of the mailing data and the multiple methods used to provide notice of the settlement to the class. The settlement administrator's declaration discusses the steps taken by his company to obtain the most updated addresses for the class members, the mailing of the full settlement notice and publication of the summary notice, the number of "hits" on his company's settlement website, the number of notices returned as undeliverable, the remailing of all notices returned with a forwarding address, and the numbers of opt-outs and objectors. (Holley Decl., ¶ 2; Jackson Decl., ¶¶ 2–4; Gilardi Decl., ¶¶ 1–7; Wilson Decl., ¶¶ 4–5; Marchand Decl., ¶¶ 4–5; McMillan Decl., ¶¶ 2–3; Mowat Decl., ¶¶ 2–3; Gabe Decl., ¶ 2.) Based on this record, the Court finds that the District Judge has sufficient information to determine whether reasonable notice was provided to the class pursuant to Fed.R.Civ.P. 23(e)(1)(B). Accordingly, the Easton Objectors' request for this category of discovery is denied.

### F. *Discovery Of Subscription Numbers To Calculate Attrition Rate*

■ Movants also challenge the settlement on the lack of transferability of MLS credits by MLS users who retire or leave the real estate brokerage business, and seek discovery of subscription numbers to calculate the attrition rate. (*See* Easton Objectors' Brf. at 2; Stark Objectors' Objection at 13.) As Defendants point out, however, the information Movants seek concerning the historical attrition rate is already in the record. (*See* Supplemental Brief Re Attrition Rate In Response To Objectors' Request For Discovery [Doc. No. 69] at 1 n. 1.) Defendants also contend that the historical attrition rate is irrelevant to the fairness determination, both as to individual class members and in the aggregate, and maintain that discovery into the historical attrition rate will not, in any event, predict what the attrition rate will be for the next four years. (*Id.* at 1–2.) While these points arguably lend further support to this Court's decision to deny the requested discovery, whether the lack of transferability of MLS credits and the historical attrition rate have an impact on the fairness of the settlement is a matter for the District Judge to determine at the final approval hearing. The key fact for purposes of determining the issue raised by the present discovery motions is that information pertaining to the attrition rate is in the record. As a result, the District Judge will have sufficient facts before him at the final approval hearing to determine whether the lack of transferability of MLS credits affects the fairness of the class settlement.

### IV. *Conclusion*

For the foregoing reasons, the Court finds that with the exception of current financial information to be provided to Movants as set forth below, the requested discovery is not necessary for Movants to meaningfully participate in the final approval hearing to be

---

listing services are charging. (*See* Easton Objection at 14–15.) *The Court also denies Movants'* request to depose Defendants' damage expert Christine Hammer, as Mr. Barry has already

deposed Ms. Hammer in *Freeman* and questioned her on what he contends is her omission of the final step of the damage calculations from her expert report.

held on January 28, 2005. In addition, to the extent the Stark Objectors wish to review formal discovery, including depositions, conducted in *Freeman*, they may obtain access to that discovery from Mr. Barry and/or Defendants' counsel. The Court further finds that Movants have been able to frame their objections to the settlement fully and extensively, and that the District Judge has a sufficient record on which to determine whether the settlement is fair, reasonable and adequate to the class. Accordingly, **IT IS HEREBY ORDERED**:

1. The motions to compel discovery are **GRANTED IN PART AND DENIED IN PART.**

2. Defendants shall provide Movants with current financials (most recent full year, current partial year, of balance sheets and income statements showing all financial activity, not just related to MLS), and Movants and Defendants shall submit an appropriate protective order to the Court, on or before *January 7, 2005.*

3. The Stark Objectors may obtain access to formal discovery conducted in *Freeman*, including deposition transcripts, from Mr. Barry and/or Defendants' counsel upon the Stark Objectors' execution of a suitable protective order. If the Stark Objectors seek access to that discovery, access will be provided to them on or before *January 7, 2005.*

4. The motions to compel discovery are **DENIED** in all other respects.

**IT IS SO ORDERED.**